GANTS, C.J.
**81 In Eagle-Tribune Publ. Co. v. Clerk-Magistrate of the Lawrence Div. of the Dist. Court Dep't, 448 Mass. 647, 647-648, 863 N.E.2d 517 (2007) ( Eagle-Tribune ), this court held that the public has no right under the First Amendment to the United States Constitution to attend "show cause" hearings, during which individuals who have been accused of a crime but have not been arrested have the opportunity to be heard by a clerk-magistrate[2] before the issuance of a criminal complaint. See G. L. c. 218, § 35A. Boston Globe Media Partners, LLC (the Globe), does not challenge that holding here. Nor does the Globe argue that the records of all show cause hearings should be available for public inspection. Instead, the Globe claims that the public has a common-law and constitutional right to access the records of a particular subset of show cause hearings: those where a clerk-magistrate in the District Court or the Boston Municipal Court makes a finding of probable cause, but declines in the exercise of his or her discretion to issue a criminal complaint.
We conclude that the requested show cause hearing records are not presumptively public under the common law, the First Amendment, or art. 16 of the Massachusetts Declaration of Rights, as amended *749 by art. 77 of the Amendments to the Constitution. We therefore deny the Globe's request for declaratory relief under G. L. c. 211, § 3. Any member of the public, however, may request that the records of a particular show cause hearing be made publicly available, and a clerk-magistrate or a judge shall grant such a request where the interests of justice so require.
To promote transparency, accountability, and public confidence in our judiciary with respect to the conduct of show cause hearings in the absence of a presumptive right of public access, we exercise our superintendence authority to require that all show cause hearings be electronically recorded. We also direct the Trial **82 Court to establish uniform policies and procedures for the collection of information regarding show cause hearings. This information can be used to develop compilations that could be made available to the public upon request and, at the discretion of the Trial Court, periodically published. Such compilations will not, however, reveal the identities of the persons accused where no complaint issued.[3]
Background. 1. Initiating a criminal case. Generally, the decision whether to charge an individual with a crime is made without the participation of the accused. "Many criminal prosecutions begin with [a warrantless] arrest, followed by the filing of an application for a complaint against the arrested person by a law enforcement officer."[4] Eagle-Tribune, 448 Mass. at 648-649, 863 N.E.2d 517. Under these circumstances, the clerk-magistrate reviewing the application must authorize the criminal complaint if he or she determines that it is supported by probable cause.[5] See Mass. R. Crim. P. 3 (g) (2), as appearing in 442 Mass. 1502 (2004); standard 2:04 of the District Court Standards of Judicial Practice: The Complaint Procedure (2008) (Complaint Standards)[6] ("magistrate *750 should deny a complaint for a charged offense [where the **83 accused has been arrested] only if he or she finds no probable cause or has not been provided with the facts necessary to determine whether there is probable cause for that offense").
An arrested individual, of course, has no right to be heard by a judicial officer before being arrested, and also has no right to dispute the existence of probable cause before the clerk-magistrate who decides whether to issue a criminal complaint. See Eagle-Tribune, 448 Mass. at 655, 863 N.E.2d 517 (accused not present during ex parte "complaint procedure for arrested individuals, in which a law enforcement officer swears to the underlying facts before a clerk-magistrate who must determine probable cause"); standard 2:02 of the Complaint Standards. Therefore, if the accused is arrested and a criminal complaint issues, he or she may challenge the validity of the complaint only by filing a motion to dismiss. See Commonwealth v. DiBennadetto, 436 Mass. 310, 313, 764 N.E.2d 338 (2002) ("motion to dismiss ... is the appropriate and only way to challenge a finding of probable cause" after issuance of complaint).
An individual likewise has no right to be heard by a grand jury before indictment. See Matter of a Grand Jury Subpoena, 447 Mass. 88, 93, 849 N.E.2d 797 (2006) ("defendant does not have a right to testify before a grand jury"). If the individual is indicted, he or she may challenge the validity of the indictment only by filing a motion to dismiss it. See Commonwealth v. Garrett, 473 Mass. 257, 264, 41 N.E.3d 28 (2015) (challenge to sufficiency of indictment generally must be raised by motion to dismiss prior to trial).
But where a person has not been arrested or indicted and where **84 a law enforcement officer or private citizen[7] applies for a criminal complaint, the Legislature has granted the accused individual in many cases the right to be "heard personally or by counsel" at a show cause hearing to oppose the issuance of the complaint. G. L. c. 218, § 35A. Under § 35A, an accused's right to a show cause hearing depends on whether the alleged crime is a felony or a misdemeanor, whether the individual who files the application for a criminal complaint is a law enforcement officer or a private citizen, and whether there is an imminent threat of bodily injury, of the commission of a new crime, or of the accused's flight.[8] *751 Where the alleged crime is a misdemeanor, the accused "shall ... be given an opportunity" to participate in a show cause hearing, regardless of whether the complainant is a law enforcement officer or a private citizen. Id. Thus, for example, where two parents get into a fist fight at a youth hockey game and one of the parents (or **85 a law enforcement officer who observed the altercation) seeks to bring misdemeanor assault and battery charges against the other parent, the clerk-magistrate must hold a show cause hearing.
Where the alleged crime is a felony and the complainant is a law enforcement officer, a show cause hearing shall be held only if the law enforcement officer requests it. G. L. c. 218, § 35A. See standard 3:08 & commentary of the Complaint Standards. Using our example of an altercation at a youth hockey game, this means that if a dangerous weapon is used in the assault and battery and a police officer applies for a felony complaint against the perpetrator, no show cause hearing will be held unless the police officer requests such a hearing. If the law enforcement officer chooses not to request a show cause hearing, the clerk-magistrate shall proceed as though the accused had been arrested and decide whether probable cause exists based only on information provided by the officer. G. L. c. 218, § 35A. See standard 3:08 & commentary of the Complaint Standards.
Where the complainant seeking felony charges is not a law enforcement officer, the clerk-magistrate may exercise his or her discretion to hold a show cause hearing. G. L. c. 218, § 35A. See standard 3:09 of the Complaint Standards. The Complaint Standards encourage clerk-magistrates to schedule show cause hearings for felony charges sought by private complainants "unless there are public safety or other reasons for not doing so."[9] Standard 3:09 of the Complaint Standards.
Show cause hearings "bear[ ] little resemblance to a trial." Eagle-Tribune, 448 Mass. at 653, 863 N.E.2d 517. The accused has a right to offer his or her version of events but no right to cross-examine *752 witnesses, and the clerk-magistrate may consider evidence, including hearsay, that would not be admissible at trial. Id. And although the accused may retain a private attorney to represent him or her at the hearing, the accused has no right to appointed counsel if he or she is indigent. See id. ; G. L. c. 218, § 35A ; Mass. R. Crim. P. 8, as amended, 397 Mass. 1226 (1986) (right to counsel attaches when "defendant charged with a crime" initially appears in court).
If the clerk-magistrate determines that there is not probable cause to believe that the accused committed the crime alleged, **86 regardless of who applied for the complaint and whether the application alleges a felony or a misdemeanor, the clerk-magistrate must decline to issue the complaint. G. L. c. 218, § 35A. If the clerk-magistrate determines that there is probable cause, however, it matters whether a law enforcement officer or private citizen applied for the complaint, whether the application alleges a felony or a misdemeanor, and whether a prosecutor's office has communicated a decision to prosecute the case.
Where a law enforcement officer applies for a felony complaint, a clerk-magistrate who finds probable cause must authorize the complaint unless a prosecutor's office opposes its issuance. See standard 3:08 & commentary of the Complaint Standards. Where a private citizen applies for a felony complaint, or where anyone applies for a misdemeanor complaint, a clerk-magistrate who finds probable cause must authorize the complaint if the prosecutor's office communicates to the clerk-magistrate its intention to prosecute the case if probable cause is found. See Victory Distribs., Inc. v. Ayer Div. of the Dist. Court Dep't, 435 Mass. 136, 143, 755 N.E.2d 273 (2001) ("Should [a prosecutor] decide to prosecute, neither a judge ... nor a clerk-magistrate may bar the prosecution, as long as the complaint is legally valid"); standard 3:00 of the Complaint Standards ("If the Attorney General's office or the [d]istrict [a]ttorney's office has decided to prosecute, a magistrate must authorize the requested complaint if supported by probable cause"). "A magistrate may ordinarily assume that the [d]istrict [a]ttorney's office will prosecute a complaint supported by probable cause that is sought by police or other authorized law enforcement officials, but may also inquire in doubtful cases."[10] Standard 3.00 of the Complaint Standards.
But where a private citizen applies for a felony or misdemeanor complaint and a prosecutor's office has not communicated a decision to prosecute the case, a clerk-magistrate may in the exercise of his or her discretion decline to issue a criminal complaint even where probable cause is found. See **87 G. L. c. 218, § 35A (clerk-magistrate "may ... cause process to be issued unless there is no probable cause" [emphasis added] ); Victory Distribs., Inc., 435 Mass. at 142, 755 N.E.2d 273. Returning to our youth hockey altercation example, where a clerk-magistrate finds probable cause to believe that the accused parent struck or pushed the complainant *753 parent, and therefore committed a misdemeanor assault and battery, and where the prosecutor's office has not communicated an intent to prosecute the accused parent, the clerk-magistrate may decline to issue a criminal complaint and instead explore with the complainant and the accused ways to resolve their dispute outside the criminal justice system.
As we explained in Eagle-Tribune, 448 Mass. at 650-651, 863 N.E.2d 517, apart from the legal function of the show cause hearing to determine whether there is probable cause,
" '[t]he implicit purpose of the [§] 35A hearings is to enable the [clerk-magistrate] to screen a variety of minor criminal or potentially criminal matters out of the criminal justice system through a combination of counseling, discussion, or threat of prosecution -- techniques which might be described as characteristic, in a general way, of the process of mediation.' Snyder, Crime and Community Mediation -- The Boston Experience: A Preliminary Report on the Dorchester Urban Court Program, 1978 Wis. L. Rev. 737, 746-747, quoted with approval in Gordon v. Fay, 382 Mass. 64, 69-70, 413 N.E.2d 1094 (1980).... Thus, 'a show cause hearing ... will often be used by a clerk-magistrate in an effort to bring about an informal settlement of grievances, typically relating to minor matters involving "the frictions and altercations of daily life." ' [ Commonwealth v. Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't, 439 Mass. 352, 356, 787 N.E.2d 1032 (2003) ], quoting Bradford v. Knights, 427 Mass. 748, 751, 695 N.E.2d 1068 (1998)."
The records of these show cause hearings -- where a clerk-magistrate finds probable cause but declines to issue a criminal complaint -- are what the Globe contends are presumptively public judicial records.
Where a clerk-magistrate authorizes a criminal complaint, "the application, together with any record of the facts presented to the magistrate, including any recordings, becomes part of the criminal case file and is publicly available unless impounded by a judge." Standard 5:02 of the Complaint Standards. See Administrative **88 Office of the District Court, A Guide to Public Access, Sealing & Expungement of District Court Records, at 12 (rev. Sept. 2013) (Guide to Public Access) ("Applications, police reports and other materials submitted to a clerk or judge in support of, or in opposition to, a criminal complaint that was subsequently issued" included among publicly available documents).
But where a clerk-magistrate declines to issue a criminal complaint, the application, together with any record of the facts presented to the magistrate, including any recordings, "shall be maintained separately from other records of such court." G. L. c. 218, § 35. See standard 5:01 of the Complaint Standards ("If a complaint is denied, the application form and any attachments must be kept separate from any criminal records"). In contrast with case files, which must be retained for at least ten years before being destroyed, see S.J.C. Rule 1:11, as appearing in 480 Mass. 1322 (2018), denied complaint applications and their accompanying records shall be destroyed "one year after the date such application was filed, unless [a judge] shall for good cause order that such application be retained on file for a further period of time." G. L. c. 218, § 35. See standard 5:01 of the Complaint Standards ("If a complaint is denied, the application form and any attachments must be ... destroyed after one year;" if show cause hearing was recorded, "the recording must be preserved *754 for one year").[11]
If the complainant seeks redetermination by a judge of the clerk-magistrate's decision to deny the issuance of a criminal complaint, the judge may examine the denied applications and the records associated with them. See standard 3:22 of the Complaint Standards. A request for redetermination is not formally an appeal, because there is no entitlement to review by a judge. See ibr.US_Case_Law.Schema.Case_Body:v1">id. ("If the magistrate denies a complaint, the complainant may not appeal the magistrate's determination, but may request a judge to redetermine the matter"). But it does provide a potential avenue of relief for an aggrieved complainant.[12] Where a redetermination is requested, the judge has the discretion to "consider the application **89 de novo" and hold a new show cause hearing, to review the factual information previously provided to the clerk-magistrate, or to deny redetermination, presumably because the complainant's allegations do not warrant further review. Id. If the judge decides to hold a new hearing, the complainant and the accused shall have a right to attend and present evidence. If the judge denies redetermination or declines to issue a complaint after redetermination, the complainant has no right to further judicial review. See Commonwealth v. Orbin O., 478 Mass. 759, 765, 89 N.E.3d 1151 (2018), quoting Bradford, 427 Mass. at 751, 695 N.E.2d 1068 ("even where the Legislature has given a private party the opportunity to seek a criminal complaint, we have uniformly held that the denial of a complaint creates no judicially cognizable wrong").
2. The Globe's records requests and petition pursuant to G. L. c. 211, § 3. In 2017 and 2018, the Globe requested various data concerning show cause hearings held in the District Court and the Boston Municipal Court. The Trial Court responded to these requests by providing the Globe with summary tables from the 2016 and 2017 court years. These tables listed the number of show cause hearings scheduled in each of the divisions of the District Court Department and the Boston Municipal Court Department, the number of show cause hearings where probable cause was found and a criminal complaint issued, and the number of show cause hearings where probable cause was found and no criminal complaint issued. According to this data, there were a total of 126,596 scheduled show cause hearings in 2016 and 2017. In 18,134 (or approximately fourteen percent) of these hearings, a clerk-magistrate or judge found probable cause that the accused had committed a crime, but denied the application for issuance of a criminal complaint.
On January 8, 2018, the Globe requested the court records for those show cause hearings where a judicial officer declined to issue a criminal complaint after making a finding of probable cause. The Trial Court denied this request on January 31, reasoning that until a criminal complaint has issued, a show cause hearing record "is not yet a public court record, because the court would be publicly disclosing allegations of wrongdoing where no criminal process resulted." According to the stipulated facts, the Trial Court's policy and practice *755 "is that the public has no greater right of access **90 to records of [s]how [c]ause [h]earings in which an application for a complaint is denied after a finding of probable cause is made than it has to records of such hearings in which no finding of probable cause is made." See standard 5:02 of the Complaint Standards ("Denied applications, and any electronic record of the show cause hearing, are ... unavailable to the public unless a magistrate or judge makes a determination that the legitimate interest of the public outweighs any privacy interests of the accused"). On February 2, the Globe asked the Trial Court to reconsider its response to the records request. On March 6, the Trial Court declined to do so.
On October 11, the Globe filed a petition pursuant to G. L. c. 211, § 3, seeking "review of the policy and practice ... of denying the public a presumptive common law or constitutional right of access to the records of show cause hearings conducted pursuant to G. L. c. 218, § 35A [,] after a judicial officer makes a finding of probable cause but nevertheless declines to issue process or a criminal complaint." A single justice of the county court reserved and reported the case for determination by the full court.
Discussion. The Globe argues that the public has a presumptive right to access the requested records under the common law, the First Amendment, and art. 16. We evaluate these claims in turn.
1. Common-law claim. The Globe contends that the records of § 35A hearings resulting in a finding of probable cause but not the issuance of a criminal complaint are "judicial records," which under our common law are presumptively available to the public. It is true, as set forth in G. L. c. 218, § 35, that these records are "filed" with the court, albeit "maintained separately from other records of such court." In practice, we understand this to mean that denied applications for a criminal complaint and their accompanying records must be kept physically apart from the case files of criminal and civil cases. See Victory Distribs., Inc., 435 Mass. at 141, 755 N.E.2d 273 (although clerk-magistrates declined to issue complaints, they "received [complaint] applications for filing purposes"). And it is also true that, under our common law, judicial records are generally presumptively available to the public unless a statute or court order directs their impoundment. See Commonwealth v. George W. Prescott Publ. Co., 463 Mass. 258, 262, 973 N.E.2d 667 (2012) ; Globe Newspaper Co., petitioner, 461 Mass. 113, 120, 958 N.E.2d 822 (2011). So the issue we must confront is whether denied applications for criminal complaints qualify as a type of judicial record **91 that should be considered presumptively public under our common law.
When this court has applied the common-law presumption of public access to judicial records, we have generally done so in response to a request for one of three types of records: (1) records kept in the case files of criminal and civil cases, see, e.g., Commonwealth v. Pon, 469 Mass. 296, 311, 14 N.E.3d 182 (2014) (records of closed criminal proceedings resulting in dismissal or entry of nolle prosequi); Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 605-606, 737 N.E.2d 859 (2000) ( Sharpe ) (records of civil actions seeking abuse prevention orders under G. L. c. 209A); (2) search warrants, including the accompanying application and affidavit, after the warrant is issued and returned to the court, see, e.g., Newspapers of New England, Inc. v. Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't, 403 Mass. 628, 631, 531 N.E.2d 1261 (1988), cert. denied, 490 U.S. 1066, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989) ; and (3) inquest reports and *756 transcripts, see, e.g., Globe Newspaper Co., petitioner, 461 Mass. at 120-123, 958 N.E.2d 822. The records of show cause hearings not resulting in the issuance of a criminal complaint are fundamentally different from each of these three categories of records.
By their very nature, the records sought by the Globe fall outside the first category of judicial records -- they cannot be located in a "case file" because they relate to allegations that never resulted in a criminal case. See Mass. R. Crim. P. 3 (a), as appearing in 442 Mass. 1502 (2004) ("criminal proceeding shall be commenced in the District Court by a complaint"). Furthermore, these records are required by statute to be kept separately from case files. G. L. c. 218, § 35.
The Globe recognizes that the requested records are not associated with a criminal case, but contends that denied applications for a criminal complaint are akin to search warrant and inquest records, which are presumptively public in the circumstances described below regardless of whether the investigation yields a criminal complaint. We disagree.
Search warrant records, as a matter of both common law and statute, "are judicial records to which the public's presumptive right of access applies once the warrant has been returned." George W. Prescott Publ. Co., 463 Mass. at 263, 973 N.E.2d 667. See G. L. c. 276, § 2B ("Upon the return of said [search] warrant, the affidavit shall be attached to it and shall be filed therewith, and it shall not be a public document until the warrant is returned"). Search warrant records thus become presumptively available to the public only when the **92 search warrant is returned, which means of course that the application for a search warrant was allowed. We know of no case, and none has been cited by any party or amicus, that declares that denied applications for search warrants, along with the accompanying affidavits, are judicial records made presumptively available to the public.
And inquest reports, which become presumptively public once a prosecutor "files a certificate asserting that the case will not be presented to a grand jury, or files notice that a grand jury has returned an indictment or a no bill," are also distinguishable from applications for a criminal complaint that are denied at a show cause hearing. Globe Newspaper Co., petitioner, 461 Mass. at 118, 958 N.E.2d 822. See id. at 124, 958 N.E.2d 822. Inquests are "investigative, not accusatory or adjudicatory." Id. at 115, 958 N.E.2d 822. Moreover, inquests always involve a matter of intense public interest: "a person has been killed in circumstances sufficiently suspicious as to warrant the Attorney General or a district attorney to require the death be investigated by a judge in an evidentiary hearing."[13] Id. at 122, 958 N.E.2d 822. This is in stark contrast to *757 show cause hearings, which often concern "minor matters involving the frictions and altercations of daily life" (quotation and citation omitted). Eagle-Tribune, 448 Mass. at 650, 863 N.E.2d 517.
Although show cause hearing records are distinguishable from the records to which we have previously applied the presumption of public access, the Globe claims that the presumption applies to all records filed with the court and therefore, in effect, that we should include denied applications for criminal complaints where probable cause is found as a fourth category of presumptively public judicial records. The Globe's argument is not without merit. We have long recognized that public access to court records promotes transparency, accountability, and public confidence **93 in our judiciary. "[I]t is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." George W. Prescott Publ. Co., 463 Mass. at 262-263, 973 N.E.2d 667, quoting Cowley v. Pulsifer, 137 Mass. 392, 394 (1884). The presumption of access serves this goal because it "facilitates the citizen's desire to keep a watchful eye on the workings of public agencies, permits the media to publish information concerning the operation of government, ... and supports the public's right to know whether public servants are carrying out their duties in an efficient and law-abiding manner" (quotations and citations omitted). Sharpe, 432 Mass. at 606, 737 N.E.2d 859. "Access to otherwise unrestricted records of judicial proceedings may therefore be viewed as an essential component of the general principle of publicity: the public often would not have a full understanding of the proceeding and therefore would not always be in a position to serve as an effective check on the system if it were denied access to judicial records" (quotations and citation omitted). Id. See Commonwealth v. Winfield, 464 Mass. 672, 678, 985 N.E.2d 86 (2013), quoting Sharpe, supra ("presumption of public access to judicial records allows the public and the media to develop a full understanding of a judicial proceeding so that they may 'keep a watchful eye' on the judicial system").
And we recognize, based in part on data that the Trial Court furnished to the Globe regarding show cause hearings held in the various divisions of the District Court and the Boston Municipal Court, that show cause hearings may warrant a "watchful eye" from the public and journalists, and that the public and the judicial system may benefit from a better understanding of the justice that is provided at such hearings. The data appears to reveal wide disparities among courts in the percentage of show cause hearings that resulted in a finding of probable cause in 2017: in the Boston Municipal Court, the percentage ranged from a high of 85.2 percent in the Central Division to a low of 42.2 percent in the Dorchester Division; in the District Court, it ranged from a high of 92.2 percent in the East Brookfield Division to a low of 21.6 percent in the Chelsea Division. Comparable disparities existed that year in the percentage of show cause hearings where probable cause was found but no criminal complaint issued: in the Boston Municipal Court, the percentage ranged from a high of 21.5 percent in the Brighton Division to a low of 4.2 percent in the Charlestown Division; in the District Court, it ranged from a high of 43.9 percent in the Gloucester Division to **94 a low of 0.2 percent in the Chelsea Division.[14] *758 We do not suggest that there is a "correct" percentage of show cause hearings that should result in a finding of probable cause or in the issuance of a criminal complaint, or even a "correct range" of percentages. We likewise do not suggest that a high percentage is better than a low percentage, or vice-versa. But the magnitude of the apparent differences among courts suggests that different clerk's offices might have very different philosophies regarding the adjudication of these hearings, and that the public and the courts could benefit from more information concerning these disparities and their potential causes.
But we also recognize that show cause hearings are fundamentally different from the sorts of proceedings and records that have warranted a presumption of publicity. In fact, they are most closely analogous to grand jury proceedings, which have long been shielded from the public eye. As with show cause hearings, grand jury proceedings "precede the formal initiation of criminal prosecution and employ the same 'probable cause to arrest' standard." Eagle-Tribune, 448 Mass. at 655, 863 N.E.2d 517. See commentary to standard 1:00 of the Complaint Standards ("complaint procedure is a judicial process in which clerks and judges of the District Court serve a grand jury-type function to determine whether a person is to be charged as a defendant in a criminal case" [emphasis added] ). And there is no common-law right of public access to the records of grand jury proceedings, even where they are filed with the court.[15] See WBZ-TV4 v. District Attorney for the Suffolk Dist., 408 Mass. 595, 599, 562 N.E.2d 817 (1990) ("requirement that grand jury proceedings remain secret is deeply rooted in the common law of the Commonwealth"); Globe Newspaper Co. v. Commonwealth, 407 Mass. 879, 887, 556 N.E.2d 356 (1990) (public "does not have a constitutional or any other right of access" to grand jury **95 proceedings). See also In re Motions of Dow Jones & Co., 142 F.3d 496, 504 (D.C. Cir.), cert. denied, 525 U.S. 820, 119 S.Ct. 60, 142 L.Ed.2d 47 (1998) ("Although some have identified a common law tradition of public access to criminal trials, this never extended to preindictment, pretrial proceedings involving a grand jury").
A denied application for a criminal complaint following a show cause hearing is comparable to a no bill issued by a grand jury. Although no bills are submitted to a judge and filed with the court, see Mass. R. Crim. P. 5 (f), as appearing in 442 Mass. 1505 (2004), they are not presumptively public. See G. L. c. 276, § 100C ("In any criminal case wherein ... a no bill has been returned by the grand jury," clerk of court where proceeding occurred or was initiated shall "seal the records of the proceedings in their files"); Guide to Public Access, at 17 ("Cases sealed because of a 'no bil' " not publicly available). Indeed, if a no bill were deemed a judicial record and made presumptively available to the public, and if the grand jury transcript and exhibits were made available with it, the resulting publicity would undermine one of the important purposes served by grand *759 jury secrecy -- "protection of individuals from notoriety and disgrace." See Matter of a John Doe Grand Jury Investigation, 415 Mass. 727, 729, 615 N.E.2d 567 (1993).
Similarly, if applications for criminal complaints were deemed judicial records presumptively available to the public, anyone would be able to access records revealing that an individual had been accused in a show cause hearing where no criminal complaint issued. This individual could then face serious collateral consequences, which would be contrary to the purpose of show cause hearings: to protect and benefit the accused, and to "screen a variety of minor criminal or potentially criminal matters out of the criminal justice system" (citation omitted). See Eagle-Tribune, 448 Mass. at 650, 863 N.E.2d 517.
Although the Globe seeks the requested records for journalistic purposes, we may not discriminate among requesters if the information sought is publicly available as a court record. See rule 2(b) of the Uniform Rules on Public Access to Court Records, Trial Court Rule XIV (2016) ("Any member of the public may submit to the [c]lerk at a courthouse a request to access a court record," and "shall not be required to disclose the reason for the request"). If past is prologue, there will be approximately 9,000 show cause hearings per year in Massachusetts where probable cause is found but no criminal complaint issues. Under the criminal **96 offender record information (CORI) statutory scheme, these records would not be available to any landlord or employer because no complaint issued. See G. L. c. 6, § 167 (CORI "shall be restricted to information recorded in criminal proceedings that are not dismissed before arraignment"); 803 Code Mass. Regs. § 2.05 (2017). But if we were to hold that these records are publicly available under our common law, landlords, employers, and others would be able to access information contained in the records of show cause hearings that resulted in a finding of probable cause (including the name of the accused and the alleged criminal offense) and use it in making housing, employment, and other important decisions affecting the lives of accused individuals, even though no criminal complaint ever issued.
This court has previously recognized that an individual's criminal record can have "long-term collateral consequences" for that individual when it is accessible by landlords and employers. Pon, 469 Mass. at 315, 14 N.E.3d 182. See ibr.US_Case_Law.Schema.Case_Body:v1">id. ("there is persuasive evidence that employers and housing authorities consider criminal history in making decisions"); id. at 315-316, 14 N.E.3d 182 ("judges may take judicial notice that the existence of a criminal record, regardless of what it contains, can present barriers to housing and employment opportunities"); Globe Newspaper Co. v. District Attorney for the Middle Dist., 439 Mass. 374, 384, 788 N.E.2d 513 (2003) ("ready access to a defendant's prior criminal record might frustrate a defendant's access to employment ... [and] housing").
There is no reason to believe that landlords and employers would treat a clerk-magistrate's recorded finding of probable cause -- even when it does not result in a criminal complaint and therefore does not result in prosecution or a criminal record -- significantly differently from a criminal record. A finding of probable cause, after all, is a judicial determination that there was sufficient evidence of criminality to launch a criminal case. And in the course of a show cause hearing, accused individuals seeking to compromise and resolve minor disputes may make concessions or admissions that they would not make in the context of a criminal trial. For employers and landlords, who may be risk-averse and often have no shortage of qualified applicants, *760 a finding of probable cause -- particularly when it is accompanied by various recorded admissions -- might be reason enough to pass over an otherwise qualified prospective employee or tenant.
And because there is no opportunity to challenge a finding of probable cause where a criminal complaint does not issue, there **97 would be no simple way for accused individuals to demonstrate to employers and landlords that they were innocent of the claims against them. In this regard, the Globe's request targets the very individuals who would be most prejudiced by public access to the records of their show cause hearings -- those whose hearings resulted in a finding of probable cause, but who had no opportunity to challenge the evidence at trial. Thus, if members of the public were permitted to learn of probable cause determinations even where they did not result in a criminal complaint, show cause hearings would transform from an opportunity to effect "informal settlement of grievances" (citation omitted) with "minimal harm to the accused's reputation," Eagle-Tribune, 448 Mass. at 650, 656, 863 N.E.2d 517, to a forum where the accused suffers the risk of collateral consequences in housing and employment even when no criminal complaint is brought against him or her. The threat of collateral consequences would inevitably increase the stakes at such a hearing and discourage the candor that could lead to a noncriminal resolution of the dispute.
The Globe contends that concerns about the collateral consequences arising from release of the requested records can be adequately addressed through the existing impoundment procedure, which allows presumptively public judicial records to be removed from public view by court order.[16] See rule 1(a) of the Uniform Rules on Impoundment Procedure, Trial Court Rule VIII (2015). We disagree.
Where records are presumptively public, a court generally "may enter an order of impoundment for good cause shown and in accordance with applicable law only after a hearing," during which "the court shall consider all relevant factors, including, but not limited to, (i) the nature of the parties and the controversy, (ii) the type of information and the privacy interests involved, (iii) the extent of community interest, (iv) constitutional rights, and (v) the reason(s) for the request." Rule 7(a)-(b) of the Uniform Rules on Impoundment Procedure. If the court finds good cause to protect **98 the relevant documents from public view, it may enter an order of impoundment, which shall be tailored in scope "so that it does not exceed the need for impoundment." Rule 8(a), (c) of the Uniform Rules on Impoundment Procedure. The requirements of impoundment are properly demanding, as "impoundment is always the exception to the rule, and the power to deny public access to judicial records is to be strictly construed in favor of the general principle of publicity" (quotation and citation omitted). Republican Co. v. Appeals Court, 442 Mass. 218, 223, 812 N.E.2d 887 (2004).
We conclude that it would be unduly burdensome to accused individuals, *761 and out of balance with the public interest, to require such individuals to move for impoundment where a § 35A hearing results in a finding of probable cause but not the issuance of a criminal complaint. Many accused individuals may be unaware of their right to move for impoundment, and reluctant to navigate the process of filing a motion, attending a hearing, and arguing good cause. And these individuals, unlike those who are charged with a crime, would have no right to the assistance of an attorney who could advise them, when appropriate, on the need for impoundment and the procedure for obtaining it. See Mass. R. Crim. P. 8 (right to counsel attaches when "defendant charged with a crime" initially appears in court); commentary to standard 3:17 of the Complaint Standards (accused persons are often not represented by counsel at show cause hearings). Practically speaking, this means that few accused individuals would be savvy enough to move for impoundment to protect the records of their hearings from public view. And, for those savvy enough to move to impound, the justification for impoundment would generally be the risk of collateral consequences arising from the probable cause finding, an argument that would be common to virtually all who are similarly situated. The opportunity to move for impoundment, thus, is an inadequate solution to the significant problems that could arise were we to conclude that the presumption of publicity applies to the records of show cause hearings not resulting in the issuance of a criminal complaint. We therefore hold that there is no common-law presumption of public access to such records.
This conclusion, we believe, is consistent with the Legislature's decision to require that the records of denied criminal complaints -- regardless of whether they resulted in a finding of probable cause -- be maintained separately from other court records. G. L. c. 218, § 35. To be sure, if we had concluded that these records enjoy a presumption of public access under our **99 common law, we would not find this legislative directive to be sufficiently clear as to reflect an intent to modify the common law. See Globe Newspaper Co., petitioner, 461 Mass. at 118, 958 N.E.2d 822 ("we do not interpret a statute to modify or abrogate an area traditionally guided by the common law, such as public access to judicial records, unless the intent to do so is clear"). But because we conclude that there is no common-law presumption of public access to these records, clear intent is not required to infer that the Legislature wanted these records to be kept separately from case files not only to facilitate their annual destruction, but also to enable them to be treated differently from case files with respect to public access.[17]
2. Constitutional claims. Having determined that there is no presumptive right of access to the records of show cause hearings where no complaint issues under *762 the common law, we now address whether there is such a presumptive right under either the First Amendment or art. 16.
a. First Amendment. The First Amendment "confers a qualified right of public access to certain judicial proceedings," and the media's right of access "derives entirely from the public's right of access." Eagle-Tribune, 448 Mass. at 651 & n.11, 863 N.E.2d 517, quoting Boston Herald, Inc. v. Superior Court Dep't of the Trial Court, 421 Mass. 502, 505, 658 N.E.2d 152 (1995). The Globe, therefore, has "neither a greater nor a lesser right ... than any other member of the public" under the First Amendment to attend a judicial proceeding and to review the records of that proceeding. Boston Herald, Inc., supra.
In order for the First Amendment right to attach, "the proceeding must satisfy a two-part test of 'experience' and 'logic': (1) the type of proceeding must have a historic tradition of openness, and (2) public access must 'play[ ] a significant positive role in the **100 functioning of the particular process in question.' " Eagle-Tribune, 448 Mass. at 651-652, 863 N.E.2d 517, quoting Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986). In Eagle-Tribune, supra at 652-656, 863 N.E.2d 517, we concluded that § 35A hearings meet neither the experience nor the logic test, and therefore held that there is no First Amendment right to attend them.
Show cause hearings "fail the 'experience' test because there is no tradition of public access to this type of proceeding," which is unlike a trial or a probable cause hearing and has always been "presumptively private and as informal as circumstances will permit" (citation and alterations omitted). Id. at 652-655, 863 N.E.2d 517. And they fail the "logic" test "because public access would not significantly aid" the functioning of a proceeding held to protect and benefit the accused and to "screen out baseless complaints with minimal harm to the accused's reputation." Id. at 656, 863 N.E.2d 517. To the contrary, these goals would only be "frustrated" by public access. Id. As earlier noted, the Globe does not ask us to revisit this holding.
We conclude that our First Amendment analysis concerning the right to attend a show cause hearing is equally applicable to the right to view the records of a show cause hearing. See Newspapers of New England, Inc., 403 Mass. at 635, 531 N.E.2d 1261 (no First Amendment right of public access to document that "has no integral relationship with any particular pretrial proceeding to which the public enjoys a First Amendment right of access"); Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 509 (1st Cir. 1989) ("First Amendment attaches only to those records connected with proceedings about which the public has a right to know"; because "public has no right to attend grand jury proceedings," it has "no right to grand jury records"). We therefore hold that the public has no First Amendment right to view the records of show cause hearings that did not result in the issuance of a criminal complaint.
b. Art. 16. The Globe argues that because the press clause of art. 16 predates the enactment of the First Amendment, its construction should not be limited to that of its Federal counterpart.[18] Instead, the *763 Globe contends, we should interpret art. 16 to support **101 a State constitutional right of access to the requested records even if there is no such Federal constitutional right. We have previously declined to extend the reach of art. 16 beyond that of the First Amendment in the context of show cause hearings, and we see no reason to revisit that declination. See Eagle-Tribune, 448 Mass. at 651 n.10, 863 N.E.2d 517, quoting Opinions of the Justices, 387 Mass. 1201, 1202, 440 N.E.2d 1159 (1982) ("the criteria which have been established by the United States Supreme Court for judging claims arising under the First Amendment ... are equally appropriate to claims brought under cognate provisions of the Massachusetts Constitution"). Because we conclude that there is no First Amendment right to access the requested records, we likewise conclude that there is no right to do so under art. 16.
3. Requests for specific show cause hearing records. Our conclusion that the Globe has no common-law or constitutional presumptive right to access all of the requested records does not necessarily mean that it has no right to access some of them. It merely means that if the Globe (or any other person or entity) wishes to see the records of a particular show cause hearing or a particular subset of show cause hearings, it will have to specifically request those records.[19] In considering such requests, the burden will not be on the Trial Court or the accused "to overcome the presumption of public access by showing good cause to impound" these records. Winfield, 464 Mass. at 681, 985 N.E.2d 86. "Rather, the burden rests with the proponent of the motion to show why the interests of justice would be served by making a document that is not presumptively public available to the public in this particular case." Id.
In Eagle-Tribune, 448 Mass. at 656, 863 N.E.2d 517, we recognized, as the District Court does through its standards, that although show cause hearings are presumptively closed to the public, there may be circumstances where a show cause hearing should be open to the public. See standard 3:15 of the Complaint Standards (show cause hearings may be opened to public where "the application is one of special public significance and the magistrate concludes that legitimate public interests outweigh the accused's right of privacy"). We recognize here, as the District Court does through **102 its standards, that there may be circumstances where the records of show cause hearings in which no complaint issues, although presumptively protected from public view, should be made available to the public. See standard 5:02 of the Complaint Standards (when request to access records of show cause hearings is made, "the appropriate considerations are similar to those in determining whether to permit the public to attend a show cause hearing").
In considering individual records requests, the clerk-magistrate should balance the interests of transparency, accountability, and public confidence that might be served by making the requested records public against the risk that disclosure would unfairly result in adverse collateral consequences to the accused. As we noted in Eagle-Tribune, 448 Mass. at 656, 863 N.E.2d 517, "[w]here an incident has already attracted public attention prior to *764 a show cause hearing, the interest in shielding the participants from publicity is necessarily diminished, while the public's legitimate interest in access is correspondingly stronger." Similarly, where the accused is a public official, the interests of transparency, accountability, and public confidence are at their apex if the conduct at issue occurred in the performance of the official's professional duties or materially bears on the official's ability to perform those duties honestly or capably. See Sharpe, 432 Mass. at 606, 737 N.E.2d 859, quoting George W. Prescott Publ. Co. v. Register of Probate for Norfolk County, 395 Mass. 274, 279, 479 N.E.2d 658 (1985) (public has "right to know 'whether public servants are carrying out their duties in an efficient and law-abiding manner' "); George W. Prescott Publ. Co., supra at 278, 479 N.E.2d 658 ("public official has a significantly diminished privacy interest with respect to information relevant to the conduct of his [or her] office").
We endorse the recommendation of the Trial Court Working Group on Complaint Standards, which was established in 2018 "to examine the processes related to the initiation of criminal proceedings of a person who has not been arrested pursuant to G. L. c. 218, § 35A," that the Complaint Standards be revised to identify " 'best practices' for determining whether to open a hearing to the public or to make records of a hearing available to the public." Report of the Trial Court Working Group on Complaint Standards, at 1, 8 (2019) (Working Group Report).[20]
**103 4. Audio-recording requirement. We recognize that, although the records of a particular show cause hearing can be made available on request where the interests of justice so require, the interests of transparency, accountability, and public confidence cannot adequately be served if there is no audio recording of the hearing and therefore no way to ascertain all of the information that was presented to the clerk-magistrate at that hearing. And without an audio recording, a judge who is asked to redetermine a clerk-magistrate's decision to decline to issue a complaint after a show cause hearing and who wants to ensure that he or she knows all of the information presented to the clerk-magistrate would need to order a new hearing and bring back to court all those who attended the initial show cause hearing.
Moreover, if allegations were to surface that a clerk-magistrate acted inappropriately during a show cause hearing, such as by favoring a certain attorney, or by acting differently based on the race, gender, nationality, or citizenship of a litigant, or by acting abusively toward a litigant or attorney, an electronic recording would be the best evidence as to whether such misconduct occurred (and also the best means for a clerk-magistrate to refute an unfair allegation). Indeed, without electronic recording, there is little that the Trial Court reasonably can do to hold clerk-magistrates accountable for the manner in which they conduct such hearings.
The Complaint Standards already declare that "[i]t is good practice for all show cause hearings to be electronically recorded, *765 subject to the availability of appropriate recording devices." Standard 3:16 of the Complaint Standards. The commentary to this standard uses even more forceful language, declaring that "[i]t is strongly recommended that a show cause hearing conducted by a magistrate be electronically recorded." And where a judge conducts a show cause hearing, it must be electronically recorded. See rule 211(A)(1) of the Special Rules of the District Courts (1988); commentary to standard 3:16 of the Complaint Standards. Yet, according to the Working Group Report, only approximately one-third of the District Court's sixty-two divisions electronically record show cause hearings conducted by a **104 clerk-magistrate without a request from the accused or complainant. Working Group Report, at 9. And none of the divisions of the Boston Municipal Court records such hearings absent a request. Id. at 9-10.
We exercise our superintendence authority over all trial courts "for the furtherance of justice" and "the improvement of the administration of such courts" to direct the District Court and the Boston Municipal Court to convert the "good practice" of recording show cause hearings into a required practice. G. L. c. 211, § 3. This directive is in keeping with our requirement that grand jury proceedings, which are similar in many ways to show cause hearings, be recorded. See Commonwealth v. Grassie, 476 Mass. 202, 220, 65 N.E.3d 1199 (2017), S.C., 482 Mass. 1017, 121 N.E.3d 1290 (2019) ("the entire grand jury proceeding -- with the exception of the grand jury's own deliberations -- is to be recorded in a manner that permits reproduction and transcription"). An electronic recording of a show cause hearing shall be considered a record of that hearing, and therefore will not be presumptively public where no complaint issues. See standard 5:02 of the Complaint Standards. The preservation of such audio recordings shall continue to be governed by G. L. c. 218, § 35, and standard 5:01 of the Complaint Standards.
We have carefully considered the argument that recording show cause hearings will interfere with clerk-magistrates' ability to informally resolve disputes involving minor crimes because complainants and accused individuals may be reluctant to speak candidly "on the record." We heard comparable concerns about requiring "lobby conferences" with judges regarding a possible plea agreement to be conducted on the record. Those fears have not been realized in the four years since this requirement was added to our rules of criminal procedure. See Mass. R. Crim. P. 12 (b) (2), as appearing in 470 Mass. 1501 (2015) ("The judge may participate in plea discussions at the request of one or both of the parties if the discussions are recorded and made part of the record"). Nor were those fears realized in the decades since this court first declared that "the better practice" is to record all lobby conferences where possible pleas are discussed. See Commonwealth v. Fanelli, 412 Mass. 497, 501, 590 N.E.2d 186 (1992). We believe that fears about electronically recording show cause hearings will likewise prove unwarranted.
We recognize that implementing our directive that all show cause hearings be electronically recorded will take time, money, and training. We note, as to each of these concerns, that we do not **105 require that the electronic recording of show cause hearings conducted by clerk-magistrates be identical in its technology or its quality to the electronic recording of court room proceedings in criminal and civil cases. We leave it to the Trial Court to determine how best and most efficiently to accomplish the recording requirement, but we *766 expect it to be accomplished within one year of the issuance of this opinion.
5. Data collection and compilation. The electronic recording of show cause hearings will enhance accountability, but it will do little to enhance transparency and public confidence where most show cause hearings will be closed and most recordings will not be publicly available unless a criminal complaint issues. We are persuaded, however, that the transparency of show cause hearings can be enhanced and that public confidence can be earned without creating the unfair collateral consequences that would arise from the public availability of show cause hearing records where no complaint issues.
This can be accomplished by the Trial Court establishing uniform record-making and record-keeping policies and procedures for the collection of information regarding show cause hearings, including information relevant to potential concerns about favoritism and disparity of outcomes. This information can then be used to develop compilations that would reveal substantial information regarding show cause hearings, but would not reveal the identities of the persons accused.[21] The compilations would be available to the public solely "for scholarly, educational, journalistic, or governmental purposes" as "compiled data" pursuant to rule 3(a) of the Uniform Rules on Public Access to Court Records.[22] The Trial Court, in its discretion, could also publish some compilations periodically.
We leave it to the Trial Court to determine the most effective method by which to collect data in a way that can be compiled for **106 dissemination upon request, that responds to concerns about favoritism and disparate outcomes, and that does not identify the accused where a complaint did not issue.[23] We suggest that clerk-magistrates should be required to record, at a minimum, the dates on which the complaint is filed and the hearing is held; the court where the hearing is held; the judicial officer who conducts the hearing; whether the complainant is a law enforcement officer or a private citizen; the gender and race of the accused and, where there is one, of the private citizen complainant;[24] whether the accused or the private citizen complainant, where there is one, is represented by an attorney; the names of any such attorneys; the offense *767 alleged; and the disposition of the show cause hearing.
Conclusion. We deny the Globe's request for declaratory relief under G. L. c. 211, § 3, and conclude that there is not a presumptive right of public access to the records of all show cause hearings where a judicial officer finds probable cause to believe that the accused has committed a crime but declines to issue a criminal complaint. We recognize, however, that there are circumstances in which the interests of justice would require the records of particular show cause hearings to be made publicly available on request.
To promote transparency, accountability, and public confidence in our judiciary with respect to the conduct of show cause hearings in the absence of a presumptive right of public access, we exercise our superintendence authority to require that all show cause hearings be electronically recorded. We also direct the Trial Court to establish uniform policies and procedures for the collection of information regarding show cause hearings that can be used to develop informative compilations without revealing the identities of the persons accused. Such compilations could be made available to the public upon request pursuant to the Uniform Rules **107 on Public Access to Court Records, and published periodically at the Trial Court's discretion.
So ordered.

For the sake of simplicity, we refer to the judicial officers who conduct show cause hearings as "clerk-magistrates." We acknowledge, however, that show cause hearings may be held before a judge, a clerk, an assistant clerk, a temporary clerk, or a temporary assistant clerk. G. L. c. 218, § 35A.

We acknowledge the amicus briefs submitted by the Association of Magistrates and Assistant Clerks of the Trial Court; by Greater Boston Legal Services and the Union of Minority Neighborhoods; by Harvard Defenders, Harvard Legal Aid Bureau, and City Life/Vida Urbana; and by the American Civil Liberties Union of Massachusetts and the Massachusetts Law Reform Institute.

Under Massachusetts common law, police officers have the authority to make warrantless arrests in certain "limited circumstances." Lunn v. Commonwealth, 477 Mass. 517, 529, 78 N.E.3d 1143 (2017). "[A]n officer has authority to arrest without a warrant any person whom he or she has probable cause to believe has committed a felony," as well as "any person who commits a misdemeanor, provided the misdemeanor involves an actual or imminent breach of the peace, is committed in the officer's presence, and is ongoing at the time of the arrest or only interrupted by the arrest." Id. Where an officer lacks authority to effect a warrantless arrest, he or she must seek a criminal complaint from a clerk-magistrate.

Where an individual is arrested following the issuance of an arrest warrant, a criminal complaint or indictment will already have issued. See Mass. R. Crim. P. 6 (b), 378 Mass. 852 (1979); G. L. c. 276, § 22.

The District Court Standards of Judicial Practice: The Complaint Procedure (2008) (Complaint Standards), while "lacking the force of law or rules," "are administrative regulations promulgated by the Chief Justice of the District Court that are treated as statements of desirable practice to be followed in the District Courts" (quotation, citation, and alteration omitted). Eagle-Tribune Publ. Co. v. Clerk-Magistrate of the Lawrence Div. of the Dist. Court Dep't, 448 Mass. 647, 648 n.4, 863 N.E.2d 517 (2007) (Eagle-Tribune ). This opinion does not seek to alter that characterization of the Complaint Standards, and should not be interpreted as giving them "the force of law or rules."
Although the Boston Municipal Court is not subject to the Complaint Standards, see Matter of an Application for a Criminal Complaint, 477 Mass. 1010, 1011 n.3, 75 N.E.3d 1110 (2017), the parties have pointed to no relevant differences between the way that the District Court and the Boston Municipal Court approach show cause hearings. And, with the exception of audio recording practices, described infra, we have identified no such differences. We therefore do not distinguish between the District Court and the Boston Municipal Court in this opinion. We recommend, however, that uniform complaint standards be adopted for use in both courts. See id. ("The public might be better served if the [Boston Municipal Court] would formalize its practice in written standards"); Report of the Trial Court Working Group on Complaint Standards, at 4 (2019) (Working Group Report) ("Working Group recommends that the District Court and Boston Municipal Court departments follow the same standards," because "uniform statewide standards provide helpful guidance to both the court and the public").

We use the term "private citizen" because it is the term commonly used to describe a private person who is not a law enforcement officer, prosecutor, or other public official. By using the term, we do not mean to suggest that United States citizenship is a prerequisite for a private person to apply for a complaint; any person, whether citizen or noncitizen, documented or undocumented, may seek a criminal complaint.

General Laws c. 218, § 35A, provides in relevant part:
"If a complaint is received by a district court, or by a justice, associate justice or special justice thereof, or by a clerk, assistant clerk, temporary clerk or temporary assistant clerk thereof under [G. L. c. 218, § 32, 33, or 35 ], as the case may be, the person against whom such complaint is made, if not under arrest for the offense for which the complaint is made, shall, in the case of a complaint for a misdemeanor or a complaint for a felony received from a law enforcement officer who so requests, and may, in the discretion of any said officers in the case of a complaint for a felony which is not received from a law enforcement officer, be given an opportunity to be heard personally or by counsel in opposition to the issuance of any process based on such complaint unless there is an imminent threat of bodily injury, of the commission of a crime, or of flight from the commonwealth by the person against whom such complaint is made. The court or said officers referred to above shall consider the named defendant's criminal record and the records contained within the statewide domestic violence record keeping system maintained by the office of the commissioner of probation in determining whether an imminent threat of bodily injury exists. Unless a citation as defined in [G. L. c. 90C, § 1,] has been issued, notice shall also be given of the manner in which he may be heard in opposition as provided herein. The court, or said officer thereof, may upon consideration of the evidence, obtained by hearing or otherwise, cause process to be issued unless there is no probable cause to believe that the person who is the object of the complaint has committed the offense charged."

Regardless of the crime alleged and the identity of the complainant, no show cause hearing is available where "there is an imminent threat of bodily injury, of the commission of a crime, or of flight from the commonwealth by the person against whom such complaint is made." G. L. c. 218, § 35A.

We recognize that under standard 3:08 of the Complaint Standards, a clerk-magistrate need not assume that a prosecutor intends to prosecute every criminal complaint sought by a law enforcement officer. Where a prosecutor's office has not communicated a decision to pursue a criminal complaint brought by a law enforcement officer and where the clerk-magistrate determines -- perhaps after discussing the matter with a prosecutor -- that prosecution is not likely despite the existence of probable cause, the clerk-magistrate may decline to authorize the complaint even though it was brought by a law enforcement officer.

The destruction provisions of G. L. c. 218, § 35, do not apply to complaint applications made pursuant to G. L. c. 90, § 20C, which concerns motor vehicle offenses.

The Trial Court Working Group on Complaint Standards, described infra, recommends that individuals applying for a criminal complaint "be provided notice that they may seek redetermination of a denial of a complaint by a judge and that [they] may request the Attorney General or [d]istrict [a]ttorney to review the allegations for prosecution." Working Group Report, at 7. We endorse this recommendation.

"Under G. L. c. 38, § 8, the Attorney General or a district attorney may direct that an inquest into the death of any person be held before a judge in the District Court." Globe Newspaper Co., petitioner, 461 Mass. 113, 115, 958 N.E.2d 822 (2011). An inquest is not a trial, and is not "part of any criminal proceedings which may ensue." Id., quoting Kennedy v. Justice of the Dist. Court of Dukes County, 356 Mass. 367, 374, 252 N.E.2d 201 (1969). After the inquest is conducted, the judge must issue a written report that, along with a transcript, is filed in the Superior Court for the county where the inquest was held. Globe Newspaper Co., petitioner, supra at 116, 958 N.E.2d 822. This report "includes the name of the deceased (if known), 'when, where, and by what means the person met his [or her] death, ... all material circumstances attending the death, and the name, if known, of any person whose unlawful act or negligence appears to have contributed' to the death." Id., quoting G. L. c. 38, § 10.

In providing this data to Boston Globe Media Partners, LLC (the Globe), the Trial Court noted that it reflected the resolution of show cause hearings "as reported through MassCourts." The Trial Court added, "While all courts use MassCourts to schedule a probable cause hearing, not all courts or court personnel ... record a finding or denial of probable cause or dismissal on every application for criminal complaint in MassCourts.... The accurate record reflecting exactly what has occurred is the paper docket."

In Massachusetts, grand jury materials are also protected from public inspection by statute. See G. L. c. 268, § 13D (e ) ("Any grand jury transcript or document citing or describing grand jury testimony filed with any court shall be filed and maintained under seal, unless the paper is filed in a criminal prosecution for perjury before a grand jury").

" 'Impoundment' shall mean the act of keeping some or all of the case record separate and unavailable for public inspection. Impounded records are not accessible to anyone other than the court, clerk, authorized court personnel, attorneys of record, and the parties to the case, unless otherwise ordered. ... 'Impounded' information includes material that a statute, court rule, standing order, case law, or court order designates must be withheld as 'impounded,' 'withheld from public inspection,' 'not available for public inspection,' 'segregated,' or 'confidential,' though these terms are not exhaustive." Rule 1(b)(9) of the Uniform Rules on Impoundment Procedure, Trial Court Rule VIII (2015).

We note that where an individual is arrested without a warrant and a judicial officer determines that there is not probable cause to detain that individual, "[t]he order [releasing the individual from custody] and a written determination of the judicial officer shall be filed in the District Court having jurisdiction over the location of the arrest, together with all the written information submitted by the police. These documents shall be filed separately from the records of criminal and delinquency cases, but shall be public records." Mass. R. Crim. P. 3.1 (f), 442 Mass. 1503 (2004). See Uniform Rule for Probable Cause Determinations for Persons Arrested Without a Warrant, Trial Court Rule XI(e)(3) (1994). Such records -- which implicate a significant public interest in learning about warrantless arrests that are not supported by probable cause -- are distinguishable from the records of show cause hearings, which take place only where the accused individual has not been arrested.

Art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments to the Constitution, provides:
"The liberty of the press is essential to the security of freedom in a state: it ought not, therefore, to be restrained in this commonwealth. The right of free speech shall not be abridged."

We note that on August 3, 2018, the Globe did request the records of a particular show cause hearing from the clerk-magistrate of the Dorchester Division of the Boston Municipal Court. The court declined to provide the requested records, and the Globe does not challenge that particular decision here.

Where a clerk-magistrate denies a records request, the requester may bring that denial to a judge for redetermination. To facilitate this review and to promote accountability, "we encourage clerk-magistrates to make a written record of the reason for their decision" regarding public access in all cases where a request for show cause hearing records is made. See Eagle-Tribune, 448 Mass. at 657 n.17, 863 N.E.2d 517. In extraordinary circumstances, relief from a clerk-magistrate's or judge's decision not to release requested show cause hearing records may be sought from a single justice of this court. See id. at 657, 863 N.E.2d 517.

Because the compilations will not include identifying information, they will not be subject to the one-year destruction timeline outlined in G. L. c. 218, § 35.

"Compiled data" is defined as "electronic court records that have been generated by computerized searches of Trial Court case management database(s) resulting in the compilation of specific data elements." Rule 1(e) of the Uniform Rules on Public Access to Court Records, Trial Court Rule XIV (2016). Requests for compiled data must "identify what compiled data is sought" and "describe the purpose for requesting the compiled data." Rule 3(a). "The Court Administrator, in consultation with the Chief Justice of the Trial Court, shall have discretion to grant or deny any request or part thereof for compiled data." Rule 3(b).

According to the Trial Court, it is currently working to standardize the record-keeping practices used to collect show cause hearing data, which have thus far varied based on docketing procedures in various divisions of the District Court and the Boston Municipal Court.

Where this information is in doubt, the clerk-magistrate should request that it be self-reported by the complainant and accused. Cf. Commonwealth v. Bastaldo, 472 Mass. 16, 25-26, 32 N.E.3d 873 (2015) (noting that "the concept of race is notoriously unclear," and that in facial recognition studies concerning race, "the person making the identification is generally asked to self-identify his or her race, and that self-identification is accepted as the person's race for purposes of the study").