WBZ-TV4 *vs.* EXECUTIVE OFFICE OF LABOR & another.[1]

Suffolk. February 3, 1993. - April 7, 1993.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Employment Agency. Constitutional Law*, Employment agency. *Commissioner of Labor and Industries. License. Statute*, Construction.

General Laws c. 140, § 46R, mandates that hearings conducted by the Commissioner of Labor and Industries on applications for a license to operate an employment agency be closed to the public, and the exclusion of the public from such proceedings offends neither the First Amendment to the United States Constitution nor art. 16 of the Massachusetts Declaration of Rights. [768-771]

CIVIL ACTION commenced in the Superior Court Department on November 16, 1992.

The case was heard by *Hiller B. Zobel*, J., and a motion for injunction pending appeal was also heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Juliet A. Davison* (*Irwin B. Grant Schwarz* with her) for the plaintiff.

*Peter Sacks*, Assistant Attorney General, for the defendants.

O'CONNOR, J. This case presents the question whether G. L. c. 140, §§ 46A-46R (1990 ed.), which governs the licensing of employment agencies, or the First Amendment to the United States Constitution, or art. 16 of the Massachusetts Declaration of Rights requires the Commissioner of Labor and Industries (commissioner) to permit the general public to attend licensing hearings. The plaintiff, WBZ-TV4, sought injunctive relief in the Superior Court barring the

[1]Department of Labor and Industries.

commissioner from excluding WBZ-TV4 from a scheduled hearing on the application of Professional Nanny Inc., for a license to operate an employment agency. A judge in the Superior Court ordered that the holding of a closed licensing hearing be stayed until December 29, 1992, and that WBZ-TV4's complaint be dismissed on December 30. WBZ-TV4 appealed from that order and moved in the Superior Court for an injunction pending appeal. The motion was denied. A single justice of the Appeals Court ruled that the appeal was timely and extended the stay of the licensing hearing pending appeal. We transferred the appeal here on our own initiative. We hold that the commissioner may conduct closed licensing hearings. Therefore, we affirm the judgment below.

General Laws c. 140, § 46B, prohibits the operation of an employment agency without a license. Section 46C sets forth the information that must be included in any license application filed with the commissioner. Section 46D provides in relevant part: "Within one week after such application is so posted, published and notice thereof sent, any person may file a written protest against the issuance of such license . . . . The commissioner shall appoint a time and place for a hearing of such application and shall give at least five days notice thereof to the applicant and to any person filing such protest. The commissioner may administer oaths, subpoena witnesses and take testimony in respect to the matters contained in such application and protest and may receive evidence in the form of affidavits pertaining to such matters." Pursuant to § 46D, the commissioner published a notice in the Boston Globe newspaper of Professional Nanny Inc.'s application and a hearing scheduled for November 17, 1992. The notice stated: "Persons desiring to file a written protest against the issuance of any of these licenses should send said protest, stating the reasons why the license should not be issued, to Department of Labor & Industries . . . or may appear in person at the hearing on the assigned day, time and place . . . ." WBZ-TV4 unsuccessfully sought access to the November 17, 1992, hearing.

General Laws c. 140, § 46R, states in part: "Information secured pursuant to sections forty-six A to forty-six Q shall be confidential and for the exclusive use and information of the commissioner in the discharge of his duties hereunder. Whoever, except with the authority of the commissioner or pursuant to his rules or regulations, or as otherwise required or authorized by law, shall disclose the same, shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than six months, or both; provided, that nothing herein shall be construed to prevent the commissioner from conducting any investigation or hearing as provided for in said sections." Despite this language, WBZ-TV4 contends that § 46D mandates that licensing hearings be open to the public. We disagree.

Nothing in § 46D, even viewed in isolation, requires the public disclosure of information received at a licensing hearing, nor do the notice provisions of that section suggest that persons who have not filed an application or protest have a right to attend the hearing to listen to those who have. Section 46D does not even imply that those who attend a hearing to testify are entitled to listen to the testimony of others. Furthermore, an open § 46D hearing would conflict with the express provision of § 46R that, "[i]nformation secured pursuant to sections forty-six A to forty-six Q shall be confidential and for the exclusive use and information of the commissioner . . . ." The proviso at the end of § 46R stating that, "nothing herein shall be construed to prevent the commissioner from conducting any investigation or hearing as provided for in said sections," does not suggest that § 46D hearings are in some way exempt from the confidentiality rule. The proviso does no more than permit the commissioner to reveal information to an applicant or witness in the interests of a fair hearing and pursuit of the truth.

We turn to WBZ-TV4's constitutional arguments. We know of no case that has recognized a First Amendment right of public access to administrative licensing proceed-

ings.[2] WBZ-TV4 contends that, under the two-pronged test applied in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) (*Press-Enterprise II*), the First Amendment requires access to these proceedings. *Press-Enterprise II* held that the public has a constitutionally protected right of access to a *criminal* proceeding when that proceeding (1) has "historically been open to the press and general public," and (2) "public access plays a significant positive role in the functioning of the particular process in question." *Id.* See also *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 505 (1984) (*Press-Enterprise I*); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980) (opinion of Burger, C.J.). We need only address the first prong of this test. Even if this two-part analysis should be applied to civil administrative proceedings, a question we do not decide, holding closed hearings pursuant to § 46D does not violate the First Amendment. Nothing has come to our attention that suggests that administrative agency licensing hearings were "historically . . . open to the press and general public," *Press-Enterprise II*, *supra* at 8, "at the time when our organic laws were adopted." *Richmond Newspapers, Inc.*, *supra* at 569.

WBZ-TV4's art. 16 argument fares no better than its argument based on the First Amendment. Again, even if the two-part test discussed above applies to the question whether the press and public have an art. 16 right of access to administrative licensing proceedings, a question we need not decide, we are not persuaded that, when Massachusetts adopted its Constitution, including the Declaration of Rights, licensing hearings historically had been open. Even if we accept WBZ-

---

[2]*Society of Professional Journalists v. Secretary of Labor*, 616 F. Supp. 569 (D. Utah 1985), appeal dismissed, judgment below vacated, and remanded as moot, 832 F.2d 1180 (10th Cir. 1987), on which the plaintiff relies, held that the press and public have a First Amendment right of access to formal hearings conducted by the Mine Safety and Health Administration regarding the cause of a mine fire. That case, which was dismissed as moot, did not concern an administrative *licensing* hearing.

TV4's assertion, based on the Superior Court judge's memorandum, that a century before 1780, when the State Constitution was adopted, the Courts of General Sessions of the Peace had performed regulatory and administrative functions in a variety of matters, including some licensing responsibilities, there is no evidence of which we are aware that evidentiary hearings were conducted in open court about the propriety of granting a particular license. Therefore, it cannot fairly be said that the drafters of art. 16 understood there to have been a longstanding tradition of open licensing proceedings.

General Laws c. 140, § 46R, mandates closed licensing hearings and offends neither the Federal nor the State Constitution. We affirm the judgment.

*So ordered.*