448 Mass. 647 (2007)                                    647

Eagle-Tribune Publishing Co. *v.* Clerk-Magistrate of the Lawrence Div. of the District Court Dep't.

EAGLE-TRIBUNE PUBLISHING COMPANY *vs.* CLERK-
MAGISTRATE OF THE LAWRENCE DIVISION OF THE DISTRICT
COURT DEPARTMENT & others.[1]

Suffolk. February 5, 2007. - March 28, 2007.

Present: GREANEY, SPINA, COWIN, & CORDY, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *District Court,*
Clerk-Magistrate. *Practice, Criminal,* Show cause hearing. *Constitutional
Law,* Access to court proceedings.

Discussion of various aspects of criminal show cause hearings conducted
pursuant to G. L. c. 218, § 35A, as developed through statute, case law,
and District Court standards [648-651], and discussion of the circumstances
in which a clerk-magistrate may decide to allow public access to a
particular show cause hearing [656-657].

A single justice of this court did not abuse his discretion or commit other er-
ror in denying relief sought by a newspaper publisher from a clerk-
magistrate's ruling denying the publisher access to a criminal "show
cause" hearing conducted pursuant to G. L. c. 218, § 35A, where under
the First Amendment to the United States Constitution, there is no right of
public access to such a hearing, given that there is no tradition of public
access to this type of proceeding, and public access would not significantly
aid in its functioning. [651-656]

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on November 4, 2005.

The case was heard by *Ireland,* J.

*Peter J. Caruso* (*Peter J. Caruso, II,* with him) for the
plaintiff.

*Maura D. McLaughlin,* Assistant Attorney General, for the
defendants.

*Robert J. Ambrogi,* for Massachusetts Newspaper Publishers
Association, amicus curiae, submitted a brief.

COWIN, J. In this appeal, we consider whether there exists
under the First Amendment to the United States Constitution a

---

[1]First Justice of the Lawrence Division of the District Court Department;
Chief Justice of the District Court Department.

right of public access to "show cause" hearings that precede the initiation of criminal proceedings in certain cases. We conclude that there is not.[2]

*Background.* For purposes of the present appeal, the facts are not in dispute. In October, 2005, a twenty year old woman was stabbed at a nightclub in Lawrence, after she was allegedly served alcohol despite being under the legal drinking age. This incident attracted significant publicity. Soon after, the Lawrence police department filed an application for issuance of criminal process in the District Court against the nightclub's corporate owner. Pursuant to G. L. c. 218, § 35A, a "show cause" hearing before a clerk-magistrate was scheduled, which the court indicated would be closed to the public. The Eagle-Tribune Publishing Company (the Eagle-Tribune), publisher of the Eagle-Tribune newspaper, sought access to the show cause hearing and filed a "Motion to Open Preliminary Probable Cause Hearings to the Press and to the Public." The clerk-magistrate denied the motion,[3] as well as the Eagle-Tribune's subsequent motion for reconsideration. The Eagle-Tribune sought relief from a single justice of this court pursuant to G. L. c. 211, § 3, and the Attorney General filed an opposition. The single justice denied relief, and the Eagle-Tribune timely appealed to the full court. Because there is no First Amendment right of public access to show cause hearings, the single justice did not abuse his discretion or commit other error in denying the relief sought.

*Show cause hearings.* As this case turns largely on the nature of criminal show cause hearings in Massachusetts, we describe some of the aspects of such hearings as they have developed through statute, case law, and the District Court Standards of Judicial Practice: The Complaint Procedure (1975) (Complaint Standards).[4]

Many criminal prosecutions begin with an arrest, followed by

---

[2]We acknowledge the amicus brief of the Massachusetts Newspaper Publishers Association.

[3]In brief handwritten findings made after a hearing on the motion, the clerk-magistrate stated that the decision was "based on the [accused's] best interest as a private corporation which outweigh[s] any standing the press or public may have at such a preliminary stage of [the] proceedings."

[4]While lacking the force of law or rules, the Standards of Judicial Practice:

the filing of an application for a complaint against the arrested person by a law enforcement officer. See standards 2:00-2:04 of the Complaint Standards. However, prosecution may also be commenced by the filing of an application for issuance of criminal process against an individual or entity by a private citizen or a law enforcement officer.[5] See standards 3:00-3:26 of the Complaint Standards. In cases where criminal process is sought against a person not under arrest, G. L. c. 218, § 35A, provides for a show cause hearing at which the accused is given "an opportunity to be heard personally or by counsel in opposition to the issuance of any process."[6,7]

---

The Complaint Procedure (1975) (Complaint Standards) are "administrative regulations promulgated by the Chief Justice of the District Court that [are] treated as statements of desirable practice" to be followed in the District Courts. *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't,* 439 Mass. 352, 357 (2003). See commentary to standard 1:00 of the Complaint Standards.

[5] The Complaint Standards carefully distinguish between an "application for complaint," which is a request for a formal written charge against an individual who has already been arrested, and an "application for issuance of criminal process," which is a request for the issuance of an arrest warrant or summons. See standard 1:01 of the Complaint Standards. We do likewise.

[6] General Laws c. 218, § 35A, provides, in relevant part:

> "If a complaint is received by a district court, or by a justice, associate justice or special justice thereof, or by a clerk, assistant clerk, temporary clerk or temporary assistant clerk thereof under section 32, 33 or 35, as the case may be, the person against whom such complaint is made, if not under arrest for the offense for which the complaint is made, shall, in the case of a complaint for a misdemeanor or a complaint for a felony received from a law enforcement officer who so requests, and may, in the discretion of any said officers in the case of a complaint for a felony which is not received from a law enforcement officer, be given an opportunity to be heard personally or by counsel in opposition to the issuance of any process based on such complaint unless there is an imminent threat of bodily injury, of the commission of a crime, or of flight from the commonwealth by the person against whom such complaint is made . . . .

> "The court, or said officer thereof, may upon consideration of the evidence, obtained by hearing or otherwise, cause process to be issued unless there is no probable cause to believe that the person who is the object of the complaint has committed the offense charged. . . ."

[7] The statute previously provided for show cause hearings only for misdemeanors. See *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div.*

When first enacted in 1943, G. L. c. 218, § 35A, merely "gave a statutory basis for a practice sometimes . . . followed by the judge or clerk of allowing the attorney for the prospective defendant to state relevant circumstances which might be thought to bear on the propriety of the issuance of process." *Commonwealth* v. *Riley*, 333 Mass. 414, 416 (1956). The hearing is "held for the protection and benefit of the respondent named in the application," *Victory Distribs., Inc.* v. *Ayer Div. of the Dist. Court Dep't*, 435 Mass. 136, 142 (2001), and is not required by either the Federal Constitution or the Massachusetts Declaration of Rights, *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't*, 439 Mass. 352, 355 n.3 (2003).

The show cause hearing is held before a clerk-magistrate, who need not be an attorney. The hearing's legal function is to determine whether there is probable cause to issue criminal process against the accused. See G. L. c. 218, § 35A; commentary to standard 3:00 of the Complaint Standards. However, "[t]he implicit purpose of the [§ ] 35A hearings is to enable the [clerk-magistrate] to screen a variety of minor criminal or potentially criminal matters out of the criminal justice system through a combination of counseling, discussion, or threat of prosecution — techniques which might be described as characteristic, in a general way, of the process of mediation." Snyder, Crime and Community Mediation — The Boston Experience: A Preliminary Report on the Dorchester Urban Court Program, 1978 Wis. L. Rev. 737, 746-747, quoted with approval in *Gordon* v. *Fay*, 382 Mass. 64, 69-70 (1980). See *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't, supra* at 356; *Commonwealth* v. *Clerk of the Boston Div. of the Juvenile Court Dep't*, 432 Mass. 693, 702 & n.12 (2000); *Commonwealth* v. *Cote*, 15 Mass. App. Ct. 229, 235 (1983). Thus, "a show cause hearing . . . will often be used by a clerk-magistrate in an effort to bring about an informal settlement of grievances, typically relating to minor matters involving 'the frictions and altercations of daily life.' "

*of the Dist. Court Dep't, supra* at 354-356. A 2004 amendment expanded show cause hearings to felonies in certain situations as well. See St. 2004, c. 149, § 200.

*Commonwealth* v. *Clerk of the W. Roxbury Div. of the Dist. Court Dep't, supra* at 356, quoting *Bradford* v. *Knights,* 427 Mass. 748, 751 (1998).[8]

*Right of public access to show cause hearings.*[9] We review the decision of a single justice under G. L. c. 211, § 3, for abuse of discretion or other error of law. *Victory Distribs., Inc.* v. *Ayer Div. of the Dist. Court Dep't, supra* at 137. As the Eagle-Tribune has not argued any basis for its right to access other than the Federal Constitution, our analysis is limited to whether there exists under the First Amendment a right of public access to show cause hearings.[10]

The First Amendment confers a qualified right of public access to certain judicial proceedings.[11] See *Press-Enterprise Co.* v. *Superior Court,* 478 U.S. 1, 8-9 (1986) (*Press-Enterprise II*); *Press-Enterprise Co.* v. *Superior Court,* 464 U.S. 501, 509-10 (1984) (*Press-Enterprise I*). For this right of access to apply to a particular proceeding, the proceeding must satisfy a two-part test of "experience" and "logic": (1) the type of proceeding must have a historic tradition of openness, and (2) public access must "play[] a significant positive role in the functioning of the

---

[8]A clerk-magistrate's determination that probable cause does not exist for the issuance of criminal process may be appealed by the Commonwealth. *Commonwealth* v. *Clerk of the Boston Div. of the Juvenile Court Dep't,* 432 Mass. 693, 701 (2000).

[9]We note at the outset the Attorney General's representation that the show cause hearing to which the Eagle-Tribune sought access has already taken place, rendering the present appeal moot. This matter is, however, "capable of repetition, yet evading review." *Blake* v. *Massachusetts Parole Bd.,* 369 Mass. 701, 708 (1976). Thus, we proceed to the merits.

[10]In the course of the proceedings below, the Eagle-Tribune also claimed rights under the analogous provision of the Massachusetts Declaration of Rights, art. 16, but has not raised any such argument on appeal. In any event, "the criteria which have been established by the United States Supreme Court for judging claims arising under the First Amendment . . . are equally appropriate to claims brought under cognate provisions of the Massachusetts Constitution." *Opinions of the Justices to the House of Representatives,* 387 Mass. 1201, 1202 (1982), quoting *Colo* v. *Treasurer & Receiver Gen.,* 378 Mass. 550, 558 (1979).

[11]The right of members of the media to access judicial proceedings "derives entirely from the public's right of access," and the media "have neither a greater nor a lesser right . . . than any other member of the public." *Boston Herald, Inc.* v. *Superior Court Dep't of the Trial Court,* 421 Mass. 502, 505 (1995). See *Nixon* v. *Warner Communications, Inc.,* 435 U.S. 589, 609 (1978).

particular process in question." *Press-Enterprise II, supra* at 8.
See *WBZ-TV4* v. *Executive Office of Labor,* 414 Mass. 767, 770
(1993). In applying this test, the United States Supreme Court
has recognized that certain proceedings, such as trials, have
historically been open to the public and benefit from public
access. *Press-Enterprise II, supra* at 9. Others, however, notably
grand jury proceedings, have always been secret and "would be
totally frustrated if conducted openly." *Id.* If the tests of experi-
ence and logic are met and a First Amendment right of access to
a type of proceeding is found, such a proceeding may only be
closed to the public on specific findings that "closure is essential
to preserve higher values and is narrowly tailored to serve that
interest." *Id.,* quoting *Press-Enterprise I, supra* at 510.

a. *"Experience."* Show cause hearings fail the "experience"
test because there is no tradition of public access to this type of
proceeding. Since their beginnings as informal opportunities for
the accused to be heard on the question whether to issue criminal
process, see *Commonwealth* v. *Riley,* 333 Mass. 414, 416 (1956),
show cause hearings have always been "[p]resumptively . . .
private and as informal as circumstances will permit." Standard
3:15 of the Complaint Standards. Of course, the "experience"
test does not turn merely on the label given the proceeding,
*Press-Enterprise II, supra* at 7; thus, we must also look to whether
any analogous proceedings have historically been open to the
public, *In re Boston Herald, Inc.,* 321 F.3d 174, 184 (1st Cir.
2003).[12] However, the parties have not called our attention to, nor
have we located, any proceeding resembling a Massachusetts
show cause hearing to which the public enjoys a right of access.

The Eagle-Tribune argues strenuously that show cause hear-
ings are the equivalent of the preliminary criminal hearings to
which the Supreme Court has found a First Amendment right of
public access. See *Press-Enterprise II, supra* at 13 (finding
public right of access to California preliminary hearings).
However, this analogy fails on multiple levels. The *Press-*

---

[12]Because the test looks to national, rather than only local traditions of
openness, see *El Vocero de Puerto Rico* v. *Puerto Rico,* 508 U.S. 147, 150
(1993), we seek analogies both in Massachusetts and in other jurisdictions.

*Enterprise II* decision involved preliminary hearings held after a defendant has already been charged with a crime to determine whether sufficient evidence exists to bring the person to trial. See *Press-Enterprise II, supra* at 12. In holding that such proceedings, as conducted in California, implicate a First Amendment right of public access, the United States Supreme Court relied on the fact that they "function[] much like a full-scale trial," *id.* at 7, in that "[t]he accused has the right to personally appear . . . , to be represented by counsel, to cross-examine hostile witnesses, to present exculpatory evidence, and to exclude illegally obtained evidence," *id.* at 12.

By contrast, a show cause hearing, which takes place before any criminal prosecution has begun, bears little resemblance to a trial. The rules of evidence that obtain at a trial do not apply. See *Commonwealth* v. *Cote*, 15 Mass. App. Ct. 229, 236 (1983) (noting no "proscription against consideration of hearsay at this stage of criminal proceedings"). The accused has no right to appointed counsel at a show cause hearing, only a right to have an attorney present if one is already retained. Cf. *Coleman* v. *Alabama*, 399 U.S. 1, 9-10 (1970) (Federal Constitution requires appointment of counsel for indigent criminal defendants at preliminary hearings); *Myers* v. *Commonwealth*, 363 Mass. 843, 847-848 (1973). While the accused has the right "to be heard personally or by counsel," G. L. c. 218, § 35A, counsel is "permitted to participate only to the extent that the magistrate feels it will be materially helpful in deciding whether process should issue." Commentary to standard 3:15 of the Complaint Standards. Thus, an accused at a show cause hearing does not have a right to cross-examine the witnesses against him. See *Commonwealth* v. *Riley, supra* at 415-416.

As the Attorney General points out, the proceeding in Massachusetts that corresponds to the preliminary hearing at issue in *Press-Enterprise II* is not a show cause hearing under G. L. c. 218, § 35A, but rather, a *probable cause* hearing under G. L. c. 276, § 38.[13] See standards 3:00-3:04 of the Standards of Judicial Practice: Trials and Probable Cause Hearings (1981)

---

[13]Although the Eagle-Tribune uses the term "probable cause hearing" to refer to both types of proceedings, this is misleading. As commentary to standard 3:00 of the Standards of Judicial Practice: Trials and Probable Cause

(Probable Cause Standards). See also *Commonwealth* v. *Riley,* *supra* at 416 (distinguishing show cause hearings from probable cause hearings). Like the preliminary hearings that the Supreme Court has found to require public access (and unlike a show cause hearing), a probable cause hearing takes place after an individual is already charged with a crime.[14] See G. L. c. 276, § 38. Its purpose is to determine whether there is sufficient admissible evidence to bind the defendant over for trial in the Superior Court,[15] see *Myers* v. *Commonwealth, supra* at 846-848, a substantively higher standard of "probable cause" than that required at show cause hearings, see *id.* at 848-849.[16] See

Hearings (1981) explains, "[t]he 'probable cause hearing' discussed in this standard should be distinguished from a 'show cause hearing' for the issuance of process . . . ." The two kinds of hearing involve distinct standards of "probable cause." See commentary to standard 3:17 of the Complaint Standards ("Probable cause for the issuance of process should not be confused with probable cause to bind over. The latter is an essentially different standard applied at a later stage of the criminal justice procedure . . ."). See also note 16, *infra.*

[14]General Laws c. 276, § 38, provides:

> "The court or justice before whom a person is taken upon a charge of crime shall, as soon as may be, examine on oath the complainant and the witnesses for the prosecution, in the presence of the defendant, relative to any material matter connected with such charge. After the testimony to support the prosecution, the witnesses for the prisoner, if any, shall be examined on oath, and he may be assisted by counsel in such examination and in the cross examination of the witnesses in support of the prosecution."

[15]General Laws c. 218, § 30, provides:

> "[District courts] shall commit or bind over for trial in the superior court persons brought before them who appear to be guilty of crimes not within their final jurisdiction, and may so commit or bind over persons brought before them who appear to be guilty of crimes within their final jurisdiction. . . ."

"Defendants are held for trial only if it appears . . . (1) 'that a crime has been committed' *and* (2) 'that there is probable cause to believe the prisoner guilty' " (emphasis in original). *Corey* v. *Commonwealth,* 364 Mass. 137, 141 (1973), quoting G. L. c. 276, § 42.

[16]At a show cause hearing, the clerk-magistrate determines whether process should issue based on the probable cause to arrest standard, see *Paquette* v. *Commonwealth,* 440 Mass. 121, 131-132 (2003), cert. denied, 540 U.S. 1150 (2004), which requires only facts "sufficient to warrant a prudent man in

also standard 3:01 of the Probable Cause Standards. The probable cause hearing is a "critical stage" of the criminal process at which the defendant has the right to appointment of counsel. *Myers* v. *Commonwealth, supra* at 847-848, quoting *Coleman* v. *Alabama, supra* at 9. See *Commonwealth* v. *Britt*, 362 Mass. 325, 330-331 (1972). The defendant also has the right to present evidence and cross-examine witnesses. *Myers* v. *Commonwealth, supra* at 855-856. The rules of evidence are fully applicable and a finding of probable cause "must be based on competent testimony which would be admissible at trial." *Id.* at 849 n.6. See standard 3:02 of the Probable Cause Standards.

Show cause hearings are not like probable cause hearings. They are more akin to grand jury proceedings, which likewise precede the formal initiation of criminal prosecution and employ the same "probable cause to arrest" standard. See note 16, *supra*; *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450 (1984); *Myers* v. *Commonwealth, supra* at 848. See also commentary to standard 1:00 of the Complaint Standards ("Clerks and judges of the District Court, in effect, serve a grand jury-type function to determine whether a person is to be involuntarily cast in the role of a defendant in a criminal case"). The Supreme Court has acknowledged that grand jury proceedings require secrecy in order to function. *Press-Enterprise II, supra* at 9. Show cause hearings may also be analogized to the complaint procedure for arrested individuals, in which a law enforcement officer swears to the underlying facts before a clerk-magistrate who must determine probable cause. See G. L. c. 276, § 22; standard 2:03 of the Complaint Standards. This is an ex parte proceeding at which not even the accused, let alone the public, is present. See *Commonwealth* v. *Smallwood*, 379 Mass. 878, 884-885 (1980). Finally, to the extent that show cause hearings often function as informal dispute resolution sessions akin to court-facilitated

---

believing that the defendant had committed or was committing an offence." *Myers* v. *Commonwealth*, 363 Mass. 843, 848 (1973), quoting *Commonwealth* v. *Stevens*, 362 Mass. 24, 26 (1972). See commentary to standard 3:17 of the Complaint Standards. By contrast, at a probable cause hearing, the standard is the more stringent one applicable to a motion for a required finding of not guilty, where a judge must "view the case as if it were a trial and he were required to rule on whether there is enough credible evidence to send the case to the jury." *Myers* v. *Commonwealth, supra* at 850.

mediation, they share in a tradition not of openness, but of privacy.

b. *"Logic."* Although the two parts of the *Press-Enterprise* test are conjunctive and failure of the "experience" test is fatal to a First Amendment claim, see *WBZ-TV4* v. *Executive Office of Labor,* 414 Mass. 767, 770 (1993), we note that show cause hearings also do not meet the "logic" test, because public access would not significantly aid their functioning. The show cause hearing is "held for the protection and benefit" of the accused, *Victory Distribs., Inc.* v. *Ayer Div. of the Dist. Court Dep't,* 435 Mass. 136, 142 (2001), and allows the clerk-magistrate to screen out baseless complaints with minimal harm to the accused's reputation; this purpose would be frustrated by public access to the hearings. Furthermore, the ability of clerk-magistrates to resolve commonplace disputes without the need for criminal prosecution could be compromised by hearings open to the public, which may inflame the animosities involved.

*Allowing public access to show cause hearings.* While the First Amendment does not require that a Massachusetts show cause hearing be open to the public, there may be circumstances in which an open hearing is appropriate. Standard 3:15 of the Complaint Standards states only that show cause hearings are "presumptively" closed, not that they should always be closed. Indeed, standard 3:16 of the Complaint Standards provides:

> "If the application [for issuance of process] is one of special public significance, and if in the opinion of the magistrate the legitimate interest of the public outweighs the right of privacy in the accused, the hearing may be open to the public, and should be conducted in the formal atmosphere of a courtroom."

Where an incident has already attracted public attention prior to a show cause hearing, the interest in shielding the participants from publicity is necessarily diminished, while the public's legitimate interest in access is correspondingly stronger.

In deciding whether to allow access to a particular show cause hearing, clerk-magistrates should consider not only the

potential drawbacks of public access, but its considerable benefits:[17]

> "It is desirable that [judicial proceedings] should take place under the public eye . . . because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed."

*Republican Co.* v. *Appeals Court*, 442 Mass. 218, 222 (2004), quoting *Cowley* v. *Pulsifer*, 137 Mass. 392, 394 (1884) (Holmes, J.). The transparency that open proceedings afford may be especially important if a well-publicized show cause hearing results in a decision not to bring criminal charges, thereby ending the matter. In such cases, the public may question whether justice has been done behind the closed doors of the hearing room. This is not to say that every case that may attract public attention necessarily requires a public show cause hearing; for instance, "[t]he sole fact that the person complained against is a public official or otherwise well known is not in and of itself . . . reason for the hearing to be public." Commentary to standard 3:16 of the Complaint Standards. Of course, relief from a clerk-magistrate's decision in extraordinary cases may be sought from a single justice of this court.

*Conclusion.* The order of the single justice denying relief under G. L. c. 211, § 3, is affirmed.

*So ordered.*

---

[17]In all cases in which a request for an open hearing is made, we encourage clerk-magistrates to make a written record of the reasons for their decision, as was done here.