SUPREME JUDICIAL COURT 
 
 TRUSTEES OF BOSTON UNIVERSITY & others[1] vs. CLERK-MAGISTRATE OF THE CAMBRIDGE DIVISION OF THE DISTRICT COURT DEPARTMENT & others [2]

 
 Docket:
 SJC-13551
 
 
 Dates:
 September 9, 2024-November 14, 2024
 
 
 Present:
 Budd, C.J., Kafker, Wendlandt, & Wolohojian, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Supreme Judicial Court, Superintendence of inferior courts. District Court, Clerk-Magistrate. Practice, Criminal, Show cause hearing. Probable Cause. Public Records. Privacy. Due Process of Law, Notice, Hearing. Notice.
 
 

             Civil action commenced in the Supreme Judicial Court for the county of Suffolk on January 12, 2024.
            The case was heard by Gaziano, J.
            Jeffrey J. Pyle for the petitioners.
            Benjamin Urbelis (Janice Bassil, Michael Callanan, David Grimaldi, Stephen Neyman, Timothy R. Flaherty, & Liana LaMattina also present) for John Doe No. 1 & others.
            Kevin J. Mahoney for John Doe No. 15.
            Gabriel Thornton, Assistant Attorney General, for the respondent.
            Peter J. Haley, for Association of Magistrates and Assistant Clerks of the Trial Court of the Commonwealth of Massachusetts, amicus curiae, submitted a brief.
            KAFKER, J.  Responding to media requests following the filing of applications for criminal complaints against alleged clients of a prostitution ring, a clerk-magistrate chose to permit public access to the show cause hearings at which the applications would be considered.  She declined, however, to grant the media's requests for the underlying applications in advance of those hearings.  Thereafter, the owners of two news outlets jointly filed a petition in the county court, pursuant to G. L. c. 211, § 3, seeking to appeal from the clerk-magistrate's decision to withhold the complaint applications.  Eighteen of the accused individuals named in the applications (Does) subsequently intervened to oppose the petition, and to challenge the opening of their show cause hearings to the public.  A single justice of this court remanded the matter to the clerk-magistrate for written findings concerning specific questions that were implicated by the petitioners' and interveners' legal arguments.  After receiving and reviewing her responses, the single justice denied the petition, determining that the clerk-magistrate neither committed an error of law nor otherwise abused her discretion.
            We conclude that the single justice did not abuse his discretion in reaching this determination.  The clerk-magistrate acted reasonably and within the proper scope of her discretion in deciding to grant public access to the show cause hearings, based on her reasonable assessment that the Acting United States Attorney for the District of Massachusetts's announcements regarding the applications -- which indicated that the accused included unidentified government officials, corporate executives, and others in positions of power, wealth, and responsibility -- raised legitimate public concerns about potential favoritism and bias if such hearings were held behind closed doors, and that these concerns outweighed the interests in continued anonymity for the Does.  We also conclude that the clerk-magistrate did not abuse her discretion in denying public access to the pending complaint applications, on the basis that disclosure of such applications prior to the show cause hearings posed a risk that extraneous or erroneous information about the accused would be disclosed, without an opportunity for the accused to address or respond to such disclosures, as would be the case at the show cause hearings.
            We also reject the Does' argument that, as a matter of procedural due process, they were each entitled to notice and a private hearing prior to any decision on whether to open their show cause hearing to the public.  That said, we take this opportunity to exercise our superintendence power to direct the Trial Court to provide notice to the accused when such a request for public access is made in future cases and, further, to offer the accused an opportunity to provide a response before issuing a decision on whether to grant public access.[3]
            1.  Background.  In November 2023, the office of the United States Attorney for the District of Massachusetts issued a press release announcing that three individuals had been arrested and charged with Federal offenses for allegedly operating "sophisticated high-end brothels" in the greater Boston area as part of a multistate prostitution ring.  The press release stated that customers of the brothels "allegedly included elected officials, high[-]tech and pharmaceutical executives, doctors, military officers, government contractors that possess security clearances, professors, attorneys, scientists and accountants, among others," and that "[t]he investigation into the involvement" of those customers was "active and ongoing."  The announcement received widespread media coverage in both local and national publications.
            Approximately six weeks later, on December 18, 2023, the Acting United States Attorney for the District of Massachusetts issued a second press release concerning the investigation.  The statement began by asserting that the United States Attorney's office had "made it clear when we announced charges . . . that the investigation was ongoing and that there would be accountability for the buyers who fuel the commercial sex industry."  The press release went on to announce that, earlier that day, a Cambridge police officer, who was part of a Department of Homeland Security investigations task force, had filed criminal complaint applications against twenty-eight alleged customers of the brothels in the Cambridge Division of the District Court Department (Cambridge District Court).  It also noted that, "[u]ntil probable cause has been found, no names will be released.  If probable cause is established and criminal charges are issued by the Court, referrals will then be made to the Middlesex District Attorney's Office."  
            The criminal complaint applications sought to charge the individuals with offering to pay for sexual conduct in violation of G. L. c. 272, § 53A.  Various news organizations quickly submitted requests to the Cambridge District Court for access to the show cause hearings at which the applications would be considered.  A few days after the first of these requests was made, and apparently without providing notice to the accused,[4] the clerk-magistrate issued a decision to allow public access to all twenty-eight of the hearings.  In a short, written order, the clerk-magistrate stated that the hearings fell within "the very limited exception" to the general rule of barring public access to show cause hearings, because the "legitimate public interest outweighs the individuals' privacy rights."  One of the news organizations, WBUR-FM, went on to request access to the criminal complaint applications in advance of the hearings.  That request was denied, as was a motion for reconsideration.  WBUR-FM sought review from a judge in the District Court, who denied relief and indicated that any such request should be directed to a single justice of the Supreme Judicial Court.[5]
            Thereafter, the owners of WBUR-FM and the Boston Globe newspaper filed the instant petition[6] in the county court, which is the single justice session of this court.  Eighteen of the accused were subsequently granted leave to intervene by the single justice.[7]  The Does requested that the single justice vacate the clerk-magistrate's decision to open the show cause hearings to the public but affirm her decision to deny media access to the complaint applications.  On January 23, 2024, the single justice issued an order remanding the matter to the clerk-magistrate to provide written findings responsive to four specific questions relevant to the parties' legal arguments concerning her decisions.[8] 
            The clerk-magistrate's subsequent findings explained that the investigation and filing of the complaint applications had garnered significant public interest.  In balancing the public interest against the individual privacy interests of the accused, the clerk-magistrate further explained, "there has been a historical trend to protect or, at the very least, not name buyers who 'fuel the commercial sex industry,'" rendering them unaccountable.  "Reversing that practice and providing the public with access that will allow it to evaluate the fairness of treatment provides a strong counterweight to the privacy interests of those responding to the complaints."  Finally, she stated that the Acting United States Attorney's description of these individuals as powerful, wealthy, and well connected raised legitimate public concerns about preferential treatment, and "[t]he only effective means to dispel those concerns is to conduct all the hearings for all [the accused] in public without regard to status or station."
            With regard to the requests to access the complaint applications, the clerk-magistrate emphasized that applications may contain extraneous and erroneous information, and that prehearing disclosure of such information would preclude the accused from being afforded an opportunity to address and resolve such issues, as they would have at a show cause hearing.
            After receiving and considering the clerk-magistrate's responses, the single justice concluded that the clerk-magistrate did not commit an error of law or otherwise abuse her discretion and entered judgment denying the petition.  He reasoned:
"Opening the show cause hearings to the public, as [the clerk-magistrate] found, promotes transparency, accountability, and public confidence in the judiciary by demonstrating that each individual accused of these crimes, no matter their station in life, is treated equally.  The Clerk-Magistrate, in her findings, articulated an adequate basis for denying access to the applications for complaint; the disclosure of extraneous personal information could create 'collateral consequences for the individuals involved, and gratuitously expose non-public information that would otherwise remain private for those persons for whom no probable cause is established.'"
This appeal followed.[9]
            2.  Discussion.  a.  Standard of review.  A single justice's decision on a petition seeking relief under G. L. c. 211, § 3, involves a two-step analysis:  (1) whether, in the single justice's discretion, review of the substantive merits of the petition is appropriate; and (2) if so, whether, upon review of the merits, the single justice concludes that the petitioner is entitled to relief.  Commonwealth v. Fontanez, 482 Mass. 22, 24, 28 (2019).  See Commonwealth v. D.M., 480 Mass. 1004, 1004 n.2 (2018) ("if a single justice exercises discretion to review the substantive merits and finds the lower court's ruling to be wrong, he or she must then correct it").  As to the first step of the analysis, the "single justice has considerable discretion when determining whether a petition presents the type of subject matter and factual circumstances that warrant an exercise of the court's extraordinary power of general superintendence," and such a determination will not be reversed absent an abuse of discretion.  Commonwealth v. Cousin, 484 Mass. 1042, 1045 (2020).  In the instant case, the single justice chose to exercise his discretion to reach the merits of the petition.  None of the parties contends that his decision to do so was an abuse of discretion.  Accordingly, we instead proceed to the second part of the single justice's analysis to determine whether he committed a clear error of law or otherwise abused his discretion.  See Commonwealth v. Clark, 454 Mass. 1001, 1002 (2009).
            In order to assess the single justice's ruling on the merits, we must, in effect, "address the same legal issue presented to the single justice:  whether the [clerk-magistrate]'s decision . . . involved an abuse of discretion or error of law."  Vasquez v. Commonwealth, 481 Mass. 747, 751 (2019), citing Commonwealth v. Chism, 476 Mass. 171, 182-185 (2017) (analyzing whether trial judge abused discretion in denying impoundment motion, without deferring to legal analysis of single justice).  Insofar as the clerk-magistrate's decision was discretionary, it will not constitute an abuse of discretion unless the clerk-magistrate "made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (citation omitted).  Vasquez, supra (under abuse of discretion standard, this court affords "great deference" to underlying decision, and "will not overturn [the] decision . . . merely because we would have reached a different result").
            b.  Public access to Does' show cause hearings.  i.  Nature of show cause hearings and relevant considerations in assessing requests for public access.  When a complaint application is filed that seeks to charge an individual with a misdemeanor offense, the accused is statutorily entitled to be heard at a "show cause" hearing (absent certain exceptions not relevant here) before a criminal complaint issues.10  See G. L. c. 218, § 35A.  See also Boston Globe Media Partners, LLC v. Chief Justice of the Trial Court, 483 Mass. 80, 84 & n.8 (2019).  "The hearing is held for the protection and benefit of the [accused] named in the application and is not required by either the Federal Constitution or the Massachusetts Declaration of Rights" (quotation and citation omitted).  Eagle-Tribune Publ. Co. v. Clerk-Magistrate of the Lawrence Div. of the Dist. Court Dep't, 448 Mass. 647, 650 (2007) (Eagle-Tribune).  It affords the accused an opportunity to oppose the issuance of a criminal complaint and to "state relevant circumstances which might be thought to bear on the propriety" of doing so.  Commonwealth v. Riley, 333 Mass. 414, 416 (1956).  
            At the show cause hearing, a clerk-magistrate[11] is then tasked with determining "whether probable cause exists to warrant the commencement of criminal proceedings" against the accused.  Commonwealth v. Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't, 439 Mass. 352, 359 (2003).  The rules of evidence do not apply, Eagle-Tribune, 448 Mass. at 653, and the clerk-magistrate is afforded "considerable discretion to limit the scope of testimony" elicited at the hearing, Commonwealth v. DiBennadetto, 436 Mass. 310, 314 (2002).  Further, in certain circumstances, a clerk-magistrate may decline to authorize a criminal complaint even upon finding probable cause.  See Boston Globe Media Partners, LLC, 483 Mass. at 86 & n.10.[12]  In light of this discretion, show cause hearings effectively enable the clerk-magistrate to "screen a variety of minor criminal or potentially criminal matters out of the criminal justice system" and are often utilized "to bring about an informal settlement of grievances, typically relating to minor matters involving the frictions and altercations of daily life" (quotation and citations omitted).  Eagle-Tribune, supra at 650-651.
            As we have previously held, the constitutional right of public access to judicial proceedings does not extend to show cause hearings.  See Eagle-Tribune, 448 Mass. at 647-648.  Indeed, such hearings are presumptively closed to members of the public.  See standard 3:15 of the District Court Standards of Judicial Practice:  The Complaint Procedure (2008) (Complaint Standards).[13]  Holding such hearings in private "allows the clerk-magistrate to screen out baseless complaints with minimal harm to the accused's reputation."  Eagle-Tribune, supra at 656.
            Nevertheless, while members of the public are not entitled to attend show cause hearings, we have recognized that "there may be circumstances in which an open hearing is appropriate."  Eagle-Tribune, 448 Mass. at 656.  Standard 3:15 of the Complaint Standards provides that, if a criminal complaint "application is one of special public significance and the magistrate concludes that legitimate public interests outweigh the accused's right of privacy, the hearing may be opened to the public."  Relevant to this consideration is whether the underlying incident "has already attracted public attention," and whether the identity of the accused is already publicly known.  See Eagle-Tribune, supra.  See also Report of the Trial Court Working Group on Complaint Standards, at 8 (2019) (Working Group Report) (recommending that clerk-magistrate consider whether "there has been prior publication of the name of the accused or the conduct for which the accused has been charged").[14]    
            Indeed, "[t]he transparency that open proceedings afford may be especially important if a well-publicized show cause hearing results in a decision not to bring criminal charges, thereby ending the matter."  Eagle-Tribune, 448 Mass. at 657.  This is because, absent a public proceeding, the public may otherwise be left "question[ing] whether justice has been done behind the closed doors of the hearing room."  Id.  However, the mere possibility that a case may attract public attention does not necessitate opening the hearing, and the "fact that the accused is well known or a public official" does not suffice, without more, to justify doing so.  Commentary to standard 3:15 of the Complaint Standards.  See Eagle-Tribune, supra.
            ii.  Clerk-magistrate's assessment of requests for public access to Does' show cause hearings.  Here, the clerk-magistrate reasonably concluded that the Does' show cause hearings are of "special public significance."  See standard 3:15 of the Complaint Standards.  They do not merely concern, as most of the Does contend, "private sexual contact" or "expression[s] of sexual intimacy."  Indeed, the complaint applications at issue are far from the typical, often minor, matters that are the subject of show cause hearings in the District Court.  Specifically, the filing of the applications began with a referral from the United States Attorney's office, after it announced charges against a major interstate prostitution ring, the need for accountability for the buyers who fuel the commercial sex industry, and a description of those buyers as including public officials, military officers, and government contractors with security clearances, as well as others in positions of responsibility, power, or wealth, such as doctors, professors, and corporate executives.  The United States Attorney's office also publicly announced that applications for twenty-eight complaints had been filed in the Cambridge District Court by a member of a Department of Homeland Security investigations task force.
            Against this backdrop, and as the clerk-magistrate further concluded, the show cause hearings implicate a number of legitimate public interests.  The filing of the complaint applications and the public announcements by the United States Attorney's office were widely reported by both local and national media outlets, attracting significant public attention.  That attention focused on whom the twenty-eight buyers were, and whether they would be, as the Acting United States Attorney emphasized, held accountable, regardless of the positions of power, wealth, or responsibility they allegedly occupied.  That accountability would begin at the show cause hearings in the Cambridge District Court; it would possibly end at those hearings as well, if the clerk-magistrate were to find that probable cause did not exist or otherwise decline to issue a criminal complaint.  The clerk-magistrate's response to the single justice's first question identified these significant public interests, and the role of the court in addressing them.  See Boston Globe Media Partners, LLC, 483 Mass. at 102 (public interests in disclosure of show cause records "are at their apex" if accused is public official and "the conduct at issue . . . materially bears on the official's ability to perform those duties honestly or capably").
            In response to the single justice's second question, the clerk-magistrate also reasonably balanced the legitimate public interests against the privacy interests of the accused.  She explained:
"there has been a historical trend to protect or, at the very least, not name buyers who 'fuel the commercial sex industry.'  Reversing that practice and providing the public with access that will allow it to evaluate the fairness of treatment provides a strong counterweight to the privacy interests of those responding to the complaints."  
Therefore, she did not, as the Does contend, fail to consider their privacy interests.
            To be sure, this is not an instance in which the identities of the accused are already publicly known.  The show cause hearing itself will reveal their identities, arguably making the privacy concerns of the accused in the show cause hearing greater than if the names of the accused had already been made public.  Even so, we cannot conclude that the clerk-magistrate's decision regarding their continued interest in anonymity was unreasonable, for the reasons she provided.
            In her balancing of interests, the clerk-magistrate also explained that, once the Acting United States Attorney identified the twenty-eight accused as including "elected officials, high tech and pharmaceutical executives, doctors, military officers, government contractors that possess security clearances, professors, attorneys, scientists and accountants," the issue whether the "applications could be adjudicated in a manner that varied based on the particular status of [the accused]" -- that is, their power, political connections, wealth, or other inappropriate considerations -- became a legitimate public interest and concern.  As she further indicated, "[t]he only effective means to dispel those concerns is to conduct all the hearings for all [the accused] in public without regard to status or station."  See Boston Globe Media Partners, LLC v. Department of Criminal Justice Info. Servs., 484 Mass. 279, 293 (2020) (public has "substantial interest" in learning whether criminal case against police officer or judge "was not prosecuted because it lacked merit[,] or because these public officials received favorable treatment arising from their position or relationships," which implicates "not only the integrity of the public officials who allegedly engaged in criminal conduct but also the integrity of our criminal justice system").
            In these circumstances, the public's interest and concern related not only to the underlying illegal activity at issue, but also to whether the judicial system would afford special treatment to the wealthy or powerful behind the "closed doors of the hearing room."  Eagle-Tribune, 448 Mass. at 657 ("The transparency that open proceedings afford may be especially important if a well-publicized show cause hearing results in a decision not to bring criminal charges, thereby ending the matter.  In such cases, the public may question whether justice has been done behind the closed doors of the hearing room").  Opening the show cause hearings to the public reasonably addresses these concerns, and the clerk-magistrate's decision to do so was not an abuse of discretion.  See id., quoting Republican Co. v. Appeals Court, 442 Mass. 218, 222 (2004) (observing desirability of conducting judicial proceedings under public eye, "because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed").  
            Moreover, given the legitimate concerns about preferential treatment, the clerk-magistrate's decision to treat all the accused together in a uniform manner was not improper.  Each accused would still be provided the individualized consideration to which he is entitled at his own show cause hearing, but such consideration would not be afforded "behind closed doors."  The clerk-magistrate could reasonably conclude that she could not personalize or individualize decisions about holding the show cause hearings privately without raising the concerns about preferential treatment that she concluded were necessary to dispel.
            We emphasize that the clerk-magistrate's decision to open the show cause hearings to the public, so as to avoid any appearance of favoritism and to further transparency, does not otherwise change the procedures or standards for issuing a complaint.  See G. L. c. 218, § 35A.  See also Boston Globe Media Partners, LLC, 483 Mass. at 86.  That is, each of the accused will still be provided an individualized show cause hearing, at which the accused will have the opportunity to oppose the issuance of a criminal complaint, based upon the specific allegations levied against him, and any individualized considerations relevant to assessing whether a complaint should issue.  This will entail allowing the accused to argue that there is not probable cause to believe the accused committed the offense alleged, or that other individual circumstances justify not issuing a complaint against him.  See id. at 86 & n.10.  
            The clerk-magistrate also retains "considerable discretion to limit the scope of testimony" elicited at the hearing and may still take into account the residual privacy interests of the accused in the exercise of such discretion.  DiBennadetto, 436 Mass. at 314.  Thus, private information concerning the accused, unnecessary to the determination of probable cause or extenuating circumstances, may be protected from disclosure at the show cause hearing by the clerk-magistrate.  See id. 
            c.  Public access to complaint applications.  We now turn to the clerk-magistrate's decision to deny the requests for access to the criminal complaint applications in advance of the Does' show cause hearings.  As is the case for show cause hearings, we have held that there is no constitutional or common-law right of public access to criminal complaint applications that have not yet resulted in the issuance of a complaint.  See Boston Globe Media Partners, LLC, 483 Mass. at 98, 100-101.  Again, helpful guidance regarding such access is found in the Complaint Standards.  In particular, standard 5:02 states:  "Public dissemination of inaccurate information in such [a pending] application could unfairly stain the reputation of the accused.  Pending applications, therefore, are presumptively unavailable to the public unless a magistrate or judge concludes that the legitimate interest of the public outweighs any privacy interests of the accused."  See Boston Globe Media Partners, LLC, supra at 102 ("In considering individual records requests, the clerk-magistrate should balance the interests of transparency, accountability, and public confidence that might be served by making the requested records public against the risk that disclosure would unfairly result in adverse collateral consequences to the accused").
            Although "the appropriate considerations are similar to those in determining whether to permit the public to attend a show cause hearing," standard 5:02 of the Complaint Standards, citing standard 3:15 of the Complaint Standards, different considerations may also be present.  The clerk-magistrate here identified such considerations, finding that a "significant difference is in the timing of the disclosure," as well as the details contained in the disclosure.  In contrast to a public show cause hearing, at which the accused would be afforded an opportunity to be heard, publicly releasing the applications would "expose[] the individual to public scrutiny and collateral consequences earlier without a meaningful opportunity to combat the allegations" in the time leading up to the hearing.  Additionally, the clerk-magistrate found that complaint applications "often contain extraneous non-public information that may impact third parties and may include personal identifying information," as well as "a considerable amount of additional information that is materially and demonstrably different from the information that may become evident in the conduct of the [show] cause hearing."  On the basis of these differences, she deemed the release of the applications filed against the Does to be inappropriate.
            In the circumstances of the instant case, it was not an abuse of discretion to deny public access to the complaint applications prior to the show cause hearings.  The applications, which have yet to be ruled upon, are presumptively unavailable to the public.  See Boston Globe Media Partners, LLC, 483 Mass. at 81.  Further, the clerk-magistrate drew reasonable distinctions between making the show cause hearings public and making the prehearing, pending applications public. 
            The disclosure of an application, prior to the show cause hearing at which it would be considered, would place the information before the public without giving the accused the chance to respond to the accusation, as he would have at the hearing itself.  Importantly, an application may not only contain erroneous information that the accused would not have a chance to rebut but may also contain extraneous information that would not be relevant to the eventual probable cause determination or the evaluation of mitigating circumstances at the show cause hearing.  Thus, releasing the pending complaint applications presents the possible risk of unrestricted public disclosure of erroneous, extraneous, or incomplete information, in a manner unlike the decision to allow public access to the show cause hearings that would not necessarily result in disclosure of the same.  Accordingly, we discern no error in the single justice's conclusion that the clerk-magistrate did not commit an error of law or otherwise abuse her discretion in denying public access to the prehearing, pending applications.  In the event that criminal complaints issue, these applications will become accessible to the public.  See Boston Globe Media Partners, LLC, 483 Mass. at 87-88; standard 5:02 of the Complaint Standards.
            d.  Constitutional right to notice and individualized hearing in opposition to request for public access to show cause hearing.  The Does separately argue that they were constitutionally entitled to notice and private hearings before the clerk-magistrate on the issue whether to provide public access to their show cause hearings.  There are numerous problems with this argument.  First, show cause hearings themselves are not constitutionally required prior to the issuance of a complaint.  See Commonwealth v. Lyons, 397 Mass. 644, 647 (1986) ("Due process of law does not require a hearing before process may properly issue on a criminal complaint").  Rather, show cause hearings are a statutory, not constitutional, requirement, and the statute requires only notice of the show cause hearing and an opportunity to be heard at the hearing, not a private show cause hearing or notice of a request to hold the hearing publicly.  See G. L. c. 218, § 35A.  Second, the so-called "stigma plus" cases that the accused rely on to support their due process argument involve not only stigma arising from the governmental action, but also the loss of a State right or benefit.  See, e.g., Patterson v. Utica, 370 F.3d 322, 330 (2d Cir. 2004) (loss of government employment).  Although a public hearing on these charges may possibly stigmatize the accused for their alleged conduct here, it will not result in a loss of any State right or benefit without notice and an opportunity to be heard.
            Under the due process clause of the Fourteenth Amendment to the United States Constitution,[15] the Commonwealth may not deprive an individual of "life, liberty, or property, without due process of law."  In order to assess whether the clerk-magistrate's failure to provide notice and a nonpublic hearing was a violation of procedural due process, we must first determine whether a constitutionally cognizable liberty or property interest was at stake in her decision to deny a private show cause hearing.  See LaChance v. Commissioner of Correction, 463 Mass. 767, 773 (2012), S.C., 475 Mass. 757 (2016).  This requires us to determine whether the decision "remove[d] or significantly alter[ed]" an interest that had "been initially recognized and protected by state law."  Paul v. Davis, 424 U.S. 693, 710–711 (1976).
            As discussed supra, an accused individual's right to a show cause hearing "is a creature of statute only," as neither the Federal nor the State Constitution guarantees the accused a right to such a hearing.  Commonwealth v. Leger, 52 Mass. App. Ct. 232, 242 (2001).  And while G. L. c. 218, § 35A, provides the accused with a statutory right to notice and "an opportunity to be heard" in opposition to the issuance of a criminal complaint, it does not specify that such a hearing will be held privately, or that notice of a request to hold the hearing publicly be provided to the accused.  See G. L. c. 218, § 35A.  Cf. Mancuso v. Massachusetts Interscholastic Athletic Ass'n, 453 Mass. 116, 126–127 (2009), quoting Regents of State Colleges v. Roth, 408 U.S. 564, 578 (1972) (to extent that rules promulgated by State entity create constitutionally cognizable property interest under due process clause, "that interest is 'defined by the terms of [those rules]'").  Further, as we detailed supra, there is a presumption that such hearings will be private, but such a presumption can be overcome in appropriate circumstances, where the legitimate public interests outweigh the privacy interest of the accused.  See Eagle-Tribune, 448 Mass. at 656.
            The Does nonetheless contend that allowing public access to their show cause hearings, irrespective of the ultimate outcomes, stigmatizes them and implicates possible collateral consequences to their professional lives, such as a possible future loss of their jobs or professional licenses, and that this constitutes a deprivation of their liberty interests.  A person's reputation does not rise to the level of a liberty or property interest protected by the due process clause, however, "unless the circumstances involve something more, such as a change in the person's rights or status protected by State law."  See Doe v. Attorney Gen., 426 Mass. 136, 143 (1997).  In the instant case, simply allowing public access to the show cause hearings may arguably stigmatize the accused, but it does not deprive them of a State right or status, such as State employment or State licenses, without notice and an opportunity to be heard. 
            The briefing here does not identify with specificity what, besides stigma, is at stake by opening the show cause hearings to the public.  Speculation as to the future possibility that permitting public access to the hearings could result in an individual employer choosing to take unfavorable action, of its own accord, against one of the accused does not amount to the State depriving the accused of a liberty or property interest.  See Paul, 424 U.S. at 711–712.  See also O'Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 789 (1980) (procedural due process protections "do[] not apply to the indirect adverse effects of governmental action").  Contrast Patterson, 370 F.3d at 330 ("deprivation of a liberty interest without due process of law may arise when an alleged government defamation occurs in the course of dismissal from government employment" [emphasis added]).  Moreover, the loss of a State license would also entail a supplementary process before a professional licensing board.  Any such process would occur after the show cause hearing, which itself would have provided the accused notice and an opportunity to be heard on the allegations contained within the complaint application.  In these circumstances, we cannot identify any constitutional due process violations caused by failing to provide notice and individualized, private hearings before determining whether to permit public access to the show cause hearings.  
            e.  Notice and opportunity to be heard in opposition to request for public access to show cause hearing.  Although we conclude that the Does do not have a due process right to a preliminary, private hearing concerning a request for public access to their show cause hearings, we do conclude that notice of such a request should be provided in future cases.  The last time this court was faced with a question concerning public access to such proceedings, we "endorse[d] the recommendation of the Trial Court Working Group on Complaint Standards . . . that the Complaint Standards be revised to identify best practices for determining whether to open a hearing to the public or to make records of a hearing available to the public" (quotations omitted).  Boston Globe Media Partners, LLC, 483 Mass. at 102, quoting Working Group Report, at 8.  One of the recommendations put forth in the Working Group Report was a suggestion to amend the Complaint Standards to "reflect that a magistrate retains discretion to notify an accused of a request for public access to a hearing or the records thereof" as well as "to permit the accused an opportunity to address whether a hearing or the records of a hearing should be open to the public."  Working Group Report, at 8.  
            To date, and notwithstanding our previous endorsement of various recommendations advanced in the Working Group Report, the Complaint Standards have not been revised since 2008.  At this juncture, we deem it appropriate, "for the furtherance of justice," to have the Trial Court adopt a uniform notice requirement akin to the recommendation put forth by the Working Group Report.  G. L. c. 211, § 3.  While that recommendation called for a discretionary approach to providing notice and an opportunity to respond, we conclude that a mandatory requirement is appropriate, in the interest of fairness and uniform treatment of the accused.  Thus, pursuant to our superintendence authority over the trial courts, we hereby direct the District Court and the Boston Municipal Court16 to begin notifying the accused of a request for public access to a show cause hearing or the records thereof, and a reasonable opportunity to provide a response, prior to issuing a decision on the request.  Additionally, the Trial Court shall be further required to timely notify the accused of its decision as to whether the hearing or records will be provided to the public.  "We leave it to the Trial Court to determine how best and most efficiently" to implement this requirement in accordance with the practical realities of the operation of the lower courts.  Boston Globe Media Partners, LLC, 483 Mass. at 105.  However, the Trial Court's implementation of this directive must, at minimum, provide the accused with timely notice of a request for public access to the accused's show cause hearing or the records thereof, and must provide the accused with an opportunity to respond, prior to issuing a decision on the request.
            3.  Conclusion.  For the reasons discussed, we affirm the judgment of the single justice denying the petition for relief under G. L. c. 211, § 3.
Judgment affirmed.

footnotes

            [1] Boston Globe Media Partners, LLC; and WBTS Television LLC, intervener.
            [2] John Does Nos. 1 through 13 and 15 through 18, interveners.
            [3] We acknowledge the amicus brief submitted by the Association of Magistrates and Assistant Clerks of the Trial Court of the Commonwealth of Massachusetts in support of the respondent.
            [4] The Does represent that they were not "notified of, served with, or given an opportunity to be heard concerning the press requests prior to the clerk-magistrate's [d]ecision."  The record before this court does not reveal precisely when or how each of the Does learned of the decision, such that they sought to intervene in the county court, but it appears to be undisputed that they were not given notice before the clerk-magistrate's initial decision issued on December 21, 2023.
            [5] But see Boston Globe Media Partners, LLC v. Chief Justice of the Trial Court, 483 Mass. 80, 102 n.20 (2019) ("Where a clerk-magistrate denies a records request, the requester may bring that denial to a judge for redetermination. . . .  In extraordinary circumstances, relief from a clerk-magistrate's or judge's decision not to release requested show cause hearing records may be sought from a single justice of this court").
            [6] WBTS Television LLC was subsequently granted leave to intervene as a petitioner as well.
            [7] John Does Nos. 1 through 13 jointly moved to intervene within five days of the petition being filed.  John Does Nos. 14 through 17 later moved to intervene as well, in advance of the matter being remanded to the clerk-magistrate.  Finally, John Doe No. 18 intervened after the order of remand, but before the single justice entered judgment on the petition.
            [8] The questions were as follows:
"First, what is the public interest that justified opening the presumptively closed show cause hearing?  Second, how is that public interest balanced against the individual privacy rights of the accused to non-public hearings?  Third, how is that public interest balanced against privacy interests in the nondisclosure of applications for complaint?  Fourth, what are the increased privacy rights at stake that require disparate treatment of requests for public access to applications for complaint?"
            [9 ]One of the Does, John Doe No. 14, did not file a notice of appeal in the county court and is not a participant in this appeal.
            [10] In Eagle-Tribune Publ. Co. v. Clerk-Magistrate of the Lawrence Div. of the Dist. Court Dep't, 448 Mass. 647, 649 n.5 (2007) (Eagle-Tribune), we "carefully distinguish[ed] between an 'application for complaint,' which is a request for a formal written charge against an individual who has already been arrested, and an 'application for issuance of criminal process,' which is a request for the issuance of an arrest warrant or summons," consistent with the terminology employed by the original District Court Standards of Judicial Practice:  The Complaint Procedure (1975).  A revised version of these standards, issued in 2008, did not retain this distinction in terminology, and instead uses the phrase "application for complaint" to refer generally to "[t]he document used to apply for, and to capture basic information about, a proposed criminal charge."  Standard 1:01 of the District Court Standards of Judicial Practice:  The Complaint Procedure (2008) (Complaint Standards).  For ease of reference, we employ the same simplified terminology herein.
            [11] Although other judicial officers are statutorily authorized to conduct show cause hearings, we will refer exclusively to clerk-magistrates in this opinion for the sake of simplicity.  See Boston Globe Media Partners, LLC, 483 Mass. at 81 n.2.  
            [12] Relevant here, if the "prosecutor's office has not communicated a decision to pursue a [misdemeanor] criminal complaint brought by a law enforcement officer and . . . the clerk-magistrate determines -- perhaps after discussing the matter with a prosecutor -- that prosecution is not likely despite the existence of probable cause, the clerk-magistrate may decline to authorize the complaint even though it was brought by a law enforcement officer."  Boston Globe Media Partners, LLC, 483 Mass. at 86 n.10.  
            [13] The Complaint Standards are "administrative regulations promulgated by the Chief Justice of the District Court that, although treated as statements of desirable practice, are not mandatory in application like statutes and rules."  Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't, 439 Mass. at 357 (referencing original 1975 iteration of Complaint Standards).  We have, however, referred to them in discussing the appropriate considerations for assessing requests for public access to show cause hearings.  See Eagle-Tribune, 448 Mass. at 656-657.  In doing so again here, our discussion "should not be interpreted as giving [the Complaint Standards] the force of law or rules" (quotation omitted).  Boston Globe Media Partners, LLC, 483 Mass. at 82 n.6.  Rather they constitute statements of "desirable" or best practices in the District Court.  See Eagle-Tribune, supra at 648 n.4.
            [14] "[T]he Trial Court Working Group on Complaint Standards . . . was established in 2018 to examine the processes related to the initiation of criminal proceedings of a person who has not been arrested pursuant to G. L. c. 218, § 35A" (quotation and citation omitted).  Boston Globe Media Partners, LLC, 483 Mass. at 102.  Among the topics considered was "[w]hether the Standards related to public access to show cause hearings should be amended, [and] specifically, whether the current Standards should provide additional guidance on the factors to consider on the issue of whether to open a show cause hearing to the public."  Working Group Report, at 1.
            [15] The Does assert that they are also entitled to procedural due process protections under art. 10 of the Massachusetts Declaration of Rights but rely on Federal jurisprudence in support of their argument.  Because the Does "engage[] in no separate discussion of Massachusetts constitutional principles[,] we review the claim solely on the basis of an alleged violation of Federal constitutional principles" (alterations, quotation, and citation omitted).  Commonwealth v. Pike, 428 Mass. 393, 402 n.5 (1998).
            [16] As in Boston Globe Media Partners, LLC, 483 Mass. at 82 n.6, where "the parties . . . pointed to no relevant differences between the way that the District Court and the Boston Municipal Court approach show cause hearings," we have identified none that is relevant to our analysis here.  Accordingly, our directive is applicable to both courts, and we again encourage "that uniform complaint standards be adopted for use in both courts."  Id.